PEOPLE v SEXTON (AFTER REMAND)

Docket No. 115216. Decided April 25, 2000. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

Corey E. Sexton was charged in the Oakland Circuit Court with first-degree murder and possession of a firearm during the commission of a felony. The court, Steven N. Andrews, J., denied the defendant's motion to suppress inculpatory statements made to the police after they knew counsel had requested to see him. Thereafter, the defendant pleaded guilty of second-degree murder, conditioned on a right to challenge the admissibility of the confessions on appeal. While the appeal was pending, *People v Bender*, 452 Mich 594 (1996), was decided, holding that the police must inform a suspect when retained counsel is available for consultation, and, if they do not, any statement made by the defendant after the attorney's arrival is to be suppressed. The Court of Appeals, FITZGERALD, P.J., and D. E. HOLBROOK JR., and E. R. POST, JJ., reversed in an unpublished opinion per curiam, concluding that suppression was mandated (Docket No. 177061). The Supreme Court reversed and remanded for further proceedings, finding that *Bender* should not be applied retroactively. 458 Mich 53 (1998). On remand, the Court of Appeals, FITZGERALD, P.J., and D. E. HOLBROOK JR., J. (MURPHY, J., dissenting), again reversed. 236 Mich App 525 (1999) (Docket No. 177061). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court *held*:

Under the totality of the circumstances, the defendant's statements were not involuntary.

The trial court found that the defendant was treated fairly by the investigating officers throughout his interrogation. He was provided with food and water and was told on at least two occasions that he was not under arrest and could leave at any time. He testified that he was treated fairly by the officers and that he was not coerced in any manner into making the challenged statements. He also was advised of his *Miranda* rights and voluntarily waived those rights

before making the challenged statements. Although there was evidence that the defendant suffers from an auditory processing disorder and that he has below average intelligence, the trial judge, who was in the best position to observe his demeanor, noted that, while testifying in this matter, he understood the questions presented to him and responded to those questions in an appropriate manner. Finally, although the police failed to inform the defendant that he had counsel available during his interrogation, failed to disclose his whereabouts to defense counsel, and failed to heed defense counsel's demands that the interrogation be stopped, under the totality of the circumstances, these factors alone did not render the defendant's otherwise voluntary statements involuntary.

Reversed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the right to counsel and the right against self-incrimination guarantee not only that an accused be informed that he is entitled to counsel but also that he has counsel. In the present case, the police kept an accused away from his attorney during an interrogation. His statements should have been suppressed. While the majority determines that the defendant's statements were voluntary under the totality of the circumstances, voluntariness is only one part of a two-part test. Waiver must also be knowing and intelligent.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Prosecuting Attorney, *Daniel L. Lemisch*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Robyn B. Frankel* for the defendant-appellee.

AFTER REMAND

PER CURIAM. On remand from this Court, the Court of Appeals reversed the defendant's convictions for second-degree murder and felony-firearm on the ground that two of five statements made by the defendant to the police were involuntary. For the reasons stated by the dissenting judge in the Court of

Appeals, we reverse the judgment of that Court and reinstate the judgment of the circuit court.

I

When this case came before us two years ago, 458 Mich 43, 46-47; 580 NW2d 404 (1998),[1] we set forth the facts:

> On September 8, 1993, Damian Phillips was shot and killed. Defendant Sexton and two other young men were at the scene of the crime when the police arrived. After initial questioning, they agreed to go to the police station and give statements about the incident.[2]
>
> Detective Melvin Marchlones questioned the defendant.[3] According to testimony given at the suppression hearing, Marchlones told the defendant that he was not under arrest and could leave at any time. In the defendant's first statement, taken about 2:23 P.M., defendant denied all culpability.
>
> Sexton's statement was not consistent with those of the other men. Upon being confronted with the inconsistencies, he gave another statement about 4:00 P.M., claiming that the gun slipped through the victim's finger, fell to the floor, and discharged. He testified that he asked to telephone his father before making the second statement and was told that he could do so "later."
>
> Defendant agreed to take a polygraph test. Marchlones reminded him that he was not under arrest and reviewed the *Miranda*[4] warnings. Defendant indicated that he under-

---

[1] Cert den sub nom *Young v Michigan*, 525 US 1126 (1999).

[2] The police questioned the defendant and two other men while sitting in a patrol car. According to the testimony of Officer Keith Lehr, the questioning was done in the police car to facilitate note taking. Lehr never told the defendant that he was under arrest.

[3] Before being questioned, the defendant was given an atomic absorption test.

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

stood and agreed to waive his rights. Before going to South-
field for the polygraph test, defendant gave a third state-
ment, claiming that the gun discharged accidentally.

Defendant was taken to the Southfield police station for a
polygraph examination. Before the test began at 7:10 P.M.,
the polygraph examiner reviewed the *Miranda* rights. Mr.
Sexton again stated that he understood the rights and
would waive them.

In the meantime, at approximately 4:45 P.M., the defend-
ant's father arrived at the Hazel Park police station and
attempted to see his son. His request was denied. At
approximately 5:00 P.M., the senior Mr. Sexton contacted his
attorney, Neil Miller. Shortly thereafter, Mr. Miller called the
Hazel Park Police Department, identified himself as defend-
ant Sexton's attorney, and left a message asking that "who-
ever was holding" the defendant to return his call. Mr.
Miller first arrived at the police station at approximately
7:00 P.M., where he informed the desk officer that he repre-
sented the defendant, that he wanted to see his client, and
that he wanted all questioning stopped. Mr. Miller was told
that the defendant was not at the police station, but was
not told where he was. The desk officer refused to contact
Marchlones. Miller left the police station and wrote a state-
ment reiterating that he was defendant Sexton's lawyer and
that he wanted all questioning stopped. He returned to the
police station at 10:20 P.M. and delivered the statement to
the desk officer, who paged Marchlones and told him that
there was a lawyer at the station who wanted to speak with
Corey Sexton.[5]

After the polygraph was completed, the examiner advised
Sexton that in his opinion defendant's answers had not
been truthful. Defendant's response was monitored and he
admitted that he intentionally shot Phillips. Sexton was
then placed under arrest and again advised of his constitu-
tional rights. Defendant stated that he understood the rights
and did not want to talk to a lawyer before further ques-

---

[5]   Detective Marchlones first became aware of Miller's presence at
10:30 P.M.

tioning. Defendant gave a recorded statement in which he again admitted that he intentionally shot his cousin. This final statement was given at 11:35 P.M.

The defendant was charged with first-degree murder, MCL 750.316(1)(a); MSA 28.548(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The defense filed a motion to suppress the defendant's inculpatory statements, but the trial court found that the statements were freely, knowingly, and voluntarily made, and denied the motion.[6]

Defendant pleaded guilty to second-degree murder, MCL 750.317; MSA 28.549, conditioned on a right to challenge the admissibility of the confessions on appeal. Sexton was sentenced to twenty to forty years for the offense, plus two years for the felony-firearm violation.

While defendant's appeal was pending, this Court decided *People v Bender* [452 Mich 594; 551 NW2d 71 (1996)]. In an unpublished opinion per curiam, issued December 20, 1996 (Docket No. 177061), the Court of Appeals reversed the decision of the trial court, concluding that suppression was mandated regarding all statements made after 5:30 P.M.[7] We granted the prosecutor's application for leave to appeal. [456 Mich 852 (1997).]

---

[6] Judge Andrews held on the basis of Justice BRICKLEY's concurrence in *People v Wright*, 441 Mich 140; 490 NW2d 351 (1992), that the failure of the police to tell the defendant about a retained attorney was just one among many factors to consider using a totality-of-the-circumstances analysis.

[7] The Court of Appeals held that statements taken after Mr. Miller's telephone call must be suppressed. The issue of whether telephone contact is sufficient to invoke the protection of *Bender* is not before us. However, we note without comment that only Justices CAVANAGH, LEVIN, and MALLETT wrote to extend the per se rule to alternative forms of police contact. *Id.* at 617.

In our 1998 opinion, we held that the decision in *Bender*[8] applied only to interrogations that occurred after July 23, 1996, and that the defendants' statements should not have been suppressed. We remanded this case to the Court of Appeals for proceedings consistent with our 1998 opinion. 458 Mich 69.

On remand, the Court of Appeals again reversed. 236 Mich App 525; 601 NW2d 399 (1999). Over the dissent of Judge MURPHY, the majority concluded:

> Considering the totality of these circumstances, we are left with the firm and definite conviction that the trial court

---

[8] The lead opinion in *Bender* states the issue and a holding that was supported by three justices of this Court:

> In this case, we are asked to consider whether, under Michigan law, a suspect's waiver of his rights to remain silent and to counsel is valid when the police fail to inform him, before he gives a statement, that a specific, retained attorney is immediately available to consult with him. We hold that Const 1963, art 1, § 17 requires the police to inform the suspect that a retained attorney is immediately available to consult with him, and failure to so inform him before he confesses per se precludes a knowing and intelligent waiver of his rights to remain silent and to counsel. [452 Mich 597 (opinion of CAVANAGH, J.).]

In an opinion presented as a concurrence, but which actually was a majority opinion, this Court stated:

> I agree with the result arrived at in the opinion for affirmance, but write separately to express my reasons for doing so.

> The case rather clearly implicates both the right to counsel (Const 1963, art 1, § 20) and the right against self-incrimination (Const 1963, art 1, § 17). I conclude that rather than interpreting these provisions, it would be more appropriate to approach the law enforcement practices that are at the core of this case in the same manner as the United States Supreme Court approached the constitutional interpretation task in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966); namely, by announcing a prophylactic rule. See *Michigan v Tucker*, 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974). [452 Mich 620-621 (opinion of BRICKLEY, J.).]

erred in finding that defendant's fourth and fifth statements were voluntary. [*People v DeLisle*, 183 Mich App 713, 719; 455 NW2d 401 ·(1990).] The attendant circumstances establish that defendant's confessions were not freely and voluntarily made. [*Haynes v Washington*, 373 US 503, 513; 83 S Ct 1336; 10 L Ed 2d 513 (1963).] Therefore, we affirm our previous holding that the trial court's order denying suppression of these two statements must be reversed. [236 Mich App 542-543.]

The majority remanded the case to circuit court for further proceedings consistent with its opinion.

The prosecutor has applied to this Court for leave to appeal.

II

The dissenting opinion of Judge MURPHY explains the majority's error. We agree with his analysis and adopt his opinion as our own:

[The Court of Appeals] review of the issue of voluntariness must be independent of that of the trial court. *People v Robinson*, 386 Mich 551, 558; 194 NW2d 709 (1972). However, we will affirm the trial court's decision unless we are left with a definite and firm conviction that a mistake has been made. *Id.*; *People v DeLisle*, 183 Mich App 713, 719; 455 NW2d 401 (1990). Further, if resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters. See *People v Marshall*, 204 Mich App 584, 587; 517 NW2d 554 (1994).

In evaluating the admissibility of a particular statement, we review the totality of the circumstances surrounding the making of the statement to determine whether it was freely and voluntarily made in light of the factors set forth by our Supreme Court in *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988):

"[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [Citations omitted.]"

After examining the totality of the circumstances surrounding defendant's statements, [we are] not left with a definite and firm conviction that the trial court erred in finding that the statements were freely and voluntarily given. Therefore, [we] affirm the decision of the trial court.

The trial court found that defendant was treated fairly by the investigating officers throughout his interrogation. Defendant was provided with food and water and was told on at least two occasions that he was not under arrest and could leave at any time. Defendant himself testified that he was treated fairly by the officers and that he was not coerced in any manner into making the challenged statements. Defendant was also advised of his *Miranda* rights and, as the majority correctly concludes, voluntarily waived those rights before making the challenged statements. Although there was evidence that defendant suffers from an auditory processing disorder and that he has below average intelligence, the trial judge, who was in the best position to observe defendant's demeanor, noted that defendant, while testifying in this matter, understood the questions presented to him and responded to those questions in an appropriate

manner. Finally, although the police failed to inform defendant that he had counsel available during his interrogation, failed to disclose defendant's whereabouts to defense counsel, and failed to heed defense counsel's demands that the interrogation be stopped, [we are] not prepared to say that, under the totality of the circumstances, these factors alone rendered defendant's otherwise voluntary statements involuntary. [236 Mich App 543-545.]

For those reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).[9]

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

---

[9] We acknowledge the prosecutor's argument that we should overrule *People v Bender*, 452 Mich 594; 551 NW2d 71 (1996). However, we decline to address that argument because *Bender* has no application here, where the interrogation took place before *Bender* was decided. *People v Sexton*, 458 Mich 43; 580 NW2d 404 (1998).

We note that the dissent mischaracterizes our holding in *Bender*. The dissent states:

In *Bender*, a majority of this Court held that a suspect has a constitutional right to be advised of the fact that counsel has been retained. *Bender, supra* at 621 (BRICKLEY, C.J., concurring). [*Post* at 755.]

However, in our original opinion in *People v Sexton*, we held to the contrary, stating:

[T]he ultimate holding of the Court [in *Bender*] was not that the rule was required by either Const 1963, art 1, § 17 or § 20. [*Id.* at 53.]

[T]he *Bender* majority expressly and unequivocally described the new rule as being prophylactic in nature, declining to find that the Michigan Constitution required it. [*Id.* at 54, n 13.]

It is apparent that the dissent wishes to overrule our previous opinion in *Sexton*. However, because we are not persuaded, nor presented with any arguments, that *Sexton* was wrongly decided, there is no need to determine whether stare decisis principles would nevertheless counsel against overruling *Sexton*.

CAVANAGH, J. (*dissenting*). I cannot join the majority. It is the second rung on an analytical ladder descending from the precedent established in *People v Bender*, 452 Mich 594; 551 NW2d 71 (1996). The first step away from *Bender* occurred when this Court gave *Bender* prospective application only. *People v Sexton*, 458 Mich 43; 580 NW2d 404 (1998). At that time, I shared Justice BRICKLEY's misgivings about the decision to limit *Bender*. Those misgivings have not disappeared with the passage of time.

In *Bender*, a majority of this Court held that a suspect has a constitutional right to be advised of the fact that counsel has been retained. *Bender*, *supra* at 621 (BRICKLEY, C.J., concurring). *Bender* recognized that the right to counsel and the right against self-incrimination guarantee not only that an accused be informed that he is entitled to counsel, but also that he has counsel. *Id*. In the present case, the police kept an accused away from his attorney during an interrogation. I cannot support an approach that purposely shields the light that *Bender* provided.

This defendant's statements should have been suppressed. The majority reaches its result by determining that the defendant's statements were voluntary under the totality of the circumstances. Voluntariness is only one part of a two-part test; waiver must also be knowing and intelligent. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1062; 16 L Ed 2d 694 (1966). The voluntariness issue would not now be before this Court had the Court previously applied the *Bender* rule.

This defendant was afflicted by the same wrongs that gave rise to this Court's *Bender* decision. Those wrongs have not diminished even in the face of this

Court's decision to handcuff *Bender*. Neither have the defendant's fundamental rights disappeared. I joined Justice BRICKLEY's well-composed dissent when this Court decided that *Bender* should be given prospective application. *Sexton, supra* at 69 (BRICKLEY, J., dissenting). The concerns Justice BRICKLEY enunciated in that dissent are equally present today.

KELLY, J., concurred with CAVANAGH, J.