NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1028n.06

No. 09-2390

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Sep 26, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| STEVEN BROWN, | ) | |
| | ) | |
| Petitioner - Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| ANDREW JACKSON, Warden, | ) | |
| | ) | |
| Respondent - Appellee. | ) | |

Before: CLAY and SUTTON, Circuit Judges; and RICE, District Judge.[*]

RICE, District Judge. Petitioner Steven Brown, convicted of second-degree murder, appeals the district court's order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He maintains that his confession was involuntary and should have been suppressed. Because we find that the Michigan state courts did not unreasonably apply clearly established federal law, we affirm the decision of the district court.

**I.**

Brown was arrested on Wednesday, September 8, 1999, by Detroit police and held for questioning in connection with the robbery and murder of Glenn Pierce. Brown maintains that the conditions in his jail cell were deplorable. The toilet was inoperable and cockroaches were

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

everywhere. Brown was afraid to go to sleep. Over the course of the next two days, Brown was periodically taken to a small, cold interrogation room for questioning. According to Brown, the officers did not read him his *Miranda* rights and ignored his repeated requests for an attorney. They also refused to allow him to contact a friend or family member. On his first night in custody, Brown began to feel ill, and by the next day, he was suffering from chills, vomiting, and diarrhea. He alleges that he repeatedly requested medical care, but the officers denied his requests.

On Friday, September 10th, after being held in custody for approximately 51 hours, Brown admitted his participation in the Pierce homicide. He then signed a written waiver of his *Miranda* rights, along with a written confession. He maintains that he did so only because one of the officers promised him that if he signed the confession, she would get him the medical care he needed, and would ensure that he was not charged with first degree murder. On Saturday morning, Brown was found unconscious in his cell and taken to the hospital where he was briefly admitted and treated for the flu. He was released to police custody on Sunday, and arraigned on Monday, September 13th, five days after his arrest.

Brown was charged with first degree felony murder, larceny, and a felony firearm charge. His attorney filed a motion to suppress the inculpatory statement, arguing that it was obtained in violation of Brown's constitutional rights. Following a six-day evidentiary hearing, the state court denied that motion, finding much of Brown's testimony to be incredible. Brown was convicted of second degree murder and sentenced to 25-50 years in prison. On direct appeal, his conviction was

affirmed on the basis that "the totality of the circumstances surrounding defendant's statement does not indicate that the police improperly coerced the statement."

Brown then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his inculpatory statement should have been suppressed as involuntarily given, and that there was insufficient evidence to support his conviction. The district court denied the petition, but granted a certificate of appealability on the suppression issue.

## II.

### A.     Standard of Review

Brown's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in part, as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Factual determinations made by the state court, including credibility determinations in the context of a hearing on a motion to suppress a confession, are presumed correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007). We review the district court's legal

conclusions *de novo*, and its factual findings for clear error.  *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006).

**B.      Voluntariness of Confession**

On appeal, Brown again argues that the Michigan Court of Appeals unreasonably applied federal law when it found that his confession was voluntary.  He argues that failing to suppress his statement violated his Fifth Amendment right against self-incrimination and his Fourteenth Amendment due process rights.

If an inculpatory statement is the product of police coercion, it is deemed involuntary and inadmissible.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Determining the voluntariness of a statement "requires careful evaluation of all the circumstances of the interrogation."  *Mincey v. Arizona*, 437 U.S. 385, 401 (1978).  Several factors are relevant to the "totality of circumstances" inquiry, including "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health," and whether the suspect was advised of his *Miranda* rights.  *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993) (citations omitted). The Michigan Court of Appeals correctly identified these constitutional principles when it quoted *People v. Sexton*, 609 N.W.2d 822, 825–26 (Mich. 2000).

Brown argues that, based on the totality of the circumstances, his confession should be deemed involuntary.  The statement was not given until he had been held in custody for 51 hours. He maintains that, during that time, he was subjected to deplorable lockup conditions and became seriously ill.  According to Brown, his repeated requests for medical treatment were denied.  He

4

maintains that he was not advised of his *Miranda* rights until immediately before he signed the written confession drafted by one of the detectives. He further contends that his repeated requests for an attorney went unanswered. He alleges that he was desperate, and believed that if he signed the confession that was prepared for him, he would be able to have bond set and would be able to seek counsel to represent him.

Brown argues that this case is similar to *Greenwald v. Wisconsin*, 390 U.S. 519 (1968), in which the Supreme Court held that the defendant's confession was involuntary. In *Greenwald*, the suspect confessed after being detained for approximately 13 hours without food, without sleep, and without medication necessary to control his high blood pressure. He was not advised of his constitutional rights until immediately before he signed the written confession, and the officers ignored his repeated requests for an attorney. *Greenwald*, however, is clearly distinguishable in that all of the facts relied upon by the Supreme Court in that case were undisputed. *See id.* at 521 (noting that the Court reached its decision "without reference to disputed testimony taken at the pretrial hearing.").

In contrast, many of the facts cited by Brown were disputed at the evidentiary hearing, and the trial court resolved those credibility issues in favor of the officers. The court found that Brown's testimony concerning the officers' failure to advise him of his constitutional rights was not credible, and noted that the officers' testimony was supported by the Constitutional Rights Certificate of Notification signed by Brown. Likewise, the trial court did not believe Brown's testimony that the officers promised him a reduced charge and medical treatment in exchange for his signed confession.

The court acknowledged that Brown suffered from flu-like symptoms prior to signing the confession, but noted that they were not life-threatening and did not appear to be a significant factor in Brown's confession. The officers testified that they observed no obvious signs of illness on the date the confession was signed. As noted above, these credibility determinations and factual findings are presumed to be correct. Brown has not rebutted that presumption by clear and convincing evidence.

It is undisputed that Brown's confession was given after he had been held for 51 hours without being arraigned. This fact is troublesome, but not determinative. As the Michigan Court of Appeals noted, the delay in arraignment is not, in itself, a sufficient basis for suppressing the statement, but merely one factor to be considered in evaluating the overall voluntariness of the statement. *People v. Manning*, 624 N.W.2d 746, 759 (Mich. Ct. App. 2000). In this case, the statement was given just three hours past the 48-hour target established in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Moreover, the trial court found that the purpose of the delay was not to extract a confession. Rather, the detectives were attempting to set up an additional live line-up; some of the witnesses were unavailable and others were scared because of alleged threats made against them.

Neither the trial court nor the state appellate court specifically addressed the allegedly deplorable jail conditions. The trial judge, however, indicated at the evidentiary hearing that he had been to the jail and was aware of the situation there. He implicitly found that this was not a significant factor that warranted suppression of Brown's confession. In concluding that the

confession was voluntary, the judge also noted that Brown had an 11th grade education, was literate, and had previous experience with the criminal justice system.

The outcome of this case hinges largely on the adverse credibility determinations made by the trial court. Because Brown failed to rebut the presumption that those factual findings are correct, we must discount his allegations concerning the failure of the officers to advise him of his *Miranda* rights, the promise of leniency and medical treatment in exchange for his confession, and the seriousness of his illness. The Michigan state courts did not unreasonably apply clearly established federal law in determining that, under the totality of the circumstances, Brown's confession was voluntarily given. Accordingly, the district court properly rejected Brown's habeas petition.

## III.

For the reasons discussed above, we AFFIRM the judgment of the district court.