*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 3, 2020

v

JONI MARIE KUIECK,

Defendant-Appellant.

No. 348246
Allegan Circuit Court
LC No. 17-021047-FH

Before: SHAPIRO, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of delivery/manufacture of methamphetamine, MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant, as a repeat drug offender, MCL 333.7413(1), to 102 to 480 months' imprisonment. We affirm.

On July 31, 2017, Michigan State Police Trooper Jason Roskam initiated a traffic stop of defendant for equipment violations. Initially defendant made several cell phone calls and refused to provide him with identification, which raised Trooper Roskam's suspicions. Trooper Roskam requested that defendant exit the vehicle and she refused. Defendant eventually provided him with identification and, while conversing with defendant, Trooper Roskam observed a "dugout"—a small wooden container that he knew from experience was typically used to hold illegal drugs. He also smelled marijuana in the vehicle. Defendant ultimately exited the vehicle. Trooper Roskam then searched defendant's car, and found multiple drugs and drug paraphernalia. Defendant was arrested and ultimately found guilty of delivery/manufacture of methamphetamine, as indicated above.

-1-

# I. PROSECUTORIAL ERROR[1]

On appeal, defendant first contends that the prosecutor engaged in "misconduct" which violated her Due Process rights. We disagree.

Generally, prosecutorial error issues are reviewed case by case under a de novo standard. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). In conducting its review, this Court must examine the pertinent portion of the record and evaluate the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *People v Bahoda*, 448 Mich 261, 267; 531 NW2d 659 (1995).

However, when defense counsel fails to object, appellate review of allegedly improper prosecutorial remarks is generally precluded, unless a curative instruction could not have eliminated the prejudicial effect or failure to consider the issue would result in a miscarriage of justice. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). This Court reviews incidences of allegedly improper conduct by the prosecutor that have not been objected to for plain error affecting defendant's substantial rights. *People v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003).

Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and their relationship to the evidence admitted at trial. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*.

Defendant argues that the prosecution improperly argued facts not in evidence during its closing argument, which created a miscarriage of justice. Specifically, defendant challenges several statements made by the prosecution concerning the alleged sale of the drugs found in her possession. During closing argument, the prosecution stated that defendant pulled into an apartment complex when being pulled over and that, "[s]he was going to that apartment complex to sell this meth to somebody." Along the same lines, the prosecution stated the following: "she literally got caught on the way to do it;" "[s]he was going there to either smoke and to sell and give away methamphetamine and weed to those people;" "[s]he is going to her friend's house with the weed and the meth to sell it to him or smoke it with him," and; "[s]cales were at her house." While there were no objections to any of the statements now challenged on appeal, defendant is correct that there was no evidence presented at trial that defendant was going to the apartment complex to sell methamphetamine, or that there were scales at her house. While it is true that Trooper Roskam testified that he found individually packaged marijuana, methamphetamine, about fifty "coin sealed bags," and drug paraphernalia indicative of drug sales in defendant's

---

[1] Although asserted to be "prosecutorial misconduct," most of the allegations by defendant are actually along the lines of error, rather than misconduct on the prosecution's part. See, *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

vehicle, there was nothing to indicate that defendant was specifically driving to the apartment complex for the purpose of selling methamphetamine. Nevertheless, defendant's substantial rights were not affected by the statement given the overwhelming admissible evidence of her guilt.

Trooper Roskam's testimony discussed a plethora of drugs and drug paraphernalia that were found in defendant's possession. Her car and purse had multiple drug-related items in them, including items typically used to package drugs for sale, as well as a lot of different denominations of money located in the same change purse that contained drugs. Given the quantity of drugs and the packaging materials and money found in defendant's possession, the prosecution's improper remark on why defendant may have been going to the apartment complex was not outcome-determinative. Moreover, the trial court instructed the jury that it was only to consider the evidence when making its determination and that "[t]he lawyers' statements and arguments and any commentary are not evidence. . . . You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (internal citation omitted).

Defendant also challenges the prosecution's statement to the jury that "[s]he was telling him, 'I don't even know what meth is' while she had a pipe on her person standing . . . on the side of the road." Trooper Roskam testified that defendant was initially denying "anything and all—any knowledge." He also testified that a glass pipe used to smoke methamphetamine was found in defendant's shirt. The prosecutor's statement, then, was arguably consistent with Trooper Roskam's testimony.

Next, the defendant claims that the prosecution's statements that "I don't like that there is little kids where there [are] big rocks of methamphetamine in cars like that, in apartment complexes like that. There are little eight-year-olds watching while this was going on" were improper. The prosecution specifically prefaced these comments with "watching that video," which was in reference to the recording of Trooper Roskam searching defendant's car. The prosecution was thus commenting on what she saw in the video. Moreover, Trooper Roskam testified that one of the rocks of methamphetamine was "the biggest rock [he had] seen all in one piece," and that there were kids running around in the parking lot where defendant's car was located. Thus, the prosecution was not arguing facts not in evidence.

Defendant next takes issue with the prosecution's statement that defendant had multiple cell phones, which is indicative of the sale of drugs. Taken in context, this statement is a reasonable inference based on other testimony concerning defendant. Immediately before the statement at issue, the prosecutor noted that defendant was living in her car and that money was thus an issue with her, but that she had multiple cell phones in the car, which did not make sense for any purpose other than to assist in drug sales. The prosecutor was free to argue this reasonable inference as it related to the theory of its case. *Unger*, 278 Mich App at 236.

Defendant also disputes the prosecutor's statement that the pipe recovered from defendant was not tested so that it could not be admitted into evidence, and that the "absence of evidence is nothing." These statements were in response to defense counsel's argument at closing that the prosecution was claiming there was a methamphetamine pipe seized from defendant's person but,

"[w]here is the glass pipe? Why wasn't that preserved as evidence? It's important." "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001), quoting *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). The prosecutor's comments were made in rebuttal to defense counsel's closing argument and thus, did not amount to error.

Finally, defendant contends that the prosecution improperly presented virtual minute-by-minute narration and opinion testimony from Trooper Roskam during the video presentation of the traffic stop. According to defendant, Trooper Roskam's testimony impermissibly encroached on the jury's duty to determine the facts.

MRE 701 permits the admission of lay opinion testimony and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In *People v Fomby*, 300 Mich App 46, 49-52; 831 NW2d 887 (2013), this Court concluded that the witness's narrative description of a video and identification of persons in the video constituted admissible lay option testimony pursuant to MRE 701. The Court discussed how, in

> *United States v Begay*, 42 F3d 486, 502 (CA 9, 1994), an officer provided narrative testimony regarding an enhanced video of a demonstration involving about 200 demonstrators that resulted in violence. The officer magnified the videotape, reviewed more than 800 photographs taken during the incident, copied portions of the videotape in slow motion, and enhanced its quality to help his identification of the individuals depicted. He then added circles and arrows to help the jury follow the defendants' movements. The United States Court of Appeals for the Ninth Circuit determined that this was not expert testimony; it was lay witness opinion testimony. [*Fomby*, 300 Mich App at 50.]

Just as the officer in *Begay* presented lay opinion testimony, Trooper Roskam also presented lay opinion testimony when he explained portions of the video recording.

The prosecution played the video of the traffic stop and paused it at various times so that Trooper Roskam could explain what was happening. During this narration, Trooper Roskam identified defendant, and then discussed when he observed defendant making phone calls while sitting in her car, when he observed drug paraphernalia in the car, the point when he smelled marijuana coming from the car, why he was trying to unlock defendant's car door, and the reasoning behind giving defendant a field sobriety test. Each time Trooper Roskam explained what was occurring, he did so in response to the prosecution's pausing of the video and asking him questions concerning what was occurring at specific points of time. Much of Trooper Roskam's narration of the video evolved into further questioning from the prosecution about the drugs and drug paraphernalia found.

-4-

In addition, both the prosecution and Trooper Roskam stated that they were having trouble hearing defendant in the video. At one point, rather that guessing at what was said, Trooper Roskam stated that he did not "recall exactly what she said there. I am also having trouble hearing." The few times Trooper Roskam specifically stated what defendant had said to him in the video was to further explain his actions. For example, when he is seen in the video giving something to defendant, he explained to the jury that defendant asked for a cigarette and told him where to find them in her car. Further, he explained that defendant told him that the brown substance he found was not heroin and admitted that there was methamphetamine in the vehicle, whereas at some prior point, defendant had denied knowledge of the drugs.

Accordingly, it is clear that Trooper Roskam was not testifying as an expert, he was simply explaining what *his* actions were and what *his* understanding of what defendant said was at certain points of the video that may not have been clear to the jury. We conclude that Trooper Roskam's comments and "narration" presented relevant testimony that was rationally based on his perceptions and aided the jury in understanding what was happening in the video. See MRE 401; MRE 701; see also *Fomby*, 300 Mich App at 49-52. In sum, there was generally no prosecutorial error and, to the extent that some of the prosecution's statements were not based on the evidence presented, the statements did not affect defendant's substantial rights. See *Barber*, 255 Mich App at 296.

## II. DUE PROCESS—*MIRANDA*

Defendant next argues that incriminating statements she made to Trooper Roskam were made involuntarily and thus admitted in violation of her Due Process rights. We disagree.

Defendant moved in the trial court for a hearing pursuant to *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965), thus preserving this issue for review. After a hearing on defendant's motion, the trial court denied defendant her requested relief. We review preserved, constitutional issues de novo. *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004).

When evaluating a trial court's determination at a *Walker* hearing, appellate courts must examine the entire record and make an independent determination regarding whether the defendant's statements were voluntarily given. *People v DeLisle*, 183 Mich App 713, 719; 455 NW2d 401 (1990). This Court will not disturb the trial court's factual findings made at a *Walker* hearing absent clear error. *People v Daoud*, 462 Mich 621, 629; 614 NW2d 152 (2000).

Both the federal and state constitutional Due Process Clauses bar the use of involuntary or coerced confessions at trial. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The question of voluntariness turns on whether the defendant's will was overborne. *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary

delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id.*]

At the *Walker* hearing, Trooper Steven Wood, who served as backup to Trooper Roskam, testified that he casually conversed with defendant while Trooper Roskam searched her vehicle, but did not ask her any questions about the incident. He testified that he believed that after Trooper Roskam began searching defendant's vehicle, Trooper Roskam came over to defendant and read her *Miranda* rights to her, but he was not definite about that. Trooper Wood further testified that defendant did not appear to be injured or under the influence of alcohol or drugs when he spoke to her, that she appeared to be intelligent, that he believed defendant had prior experience with police, that she was not handcuffed, that she was allowed to sit in the shade, that she was provided water by a nearby resident, and that all statements she made appeared to him to be voluntary.

Trooper Roskam testified at the hearing that when defendant exited the vehicle, she was not placed in custody. Trooper Roskam testified that when he located illegal substances during his search of defendant's vehicle, he went over to defendant, read her *Miranda* rights to her, then began questioning her about the items found in her vehicle. Trooper Roskam testified that he assumed, based on defendant's "antsy" appearance and slurred speech, that she was on drugs when he spoke to her. Trooper Roskam further testified that defendant nevertheless understood his questions and appeared to understand her *Miranda* rights. After she was read her rights, and upon further questioning by Trooper Roskam, defendant made incriminating statements to him.

The trial court found that defendant was provided with her *Miranda* rights and voluntarily waived those rights prior to making any admissions to Trooper Roskam. The trial court further found that defendant appeared to understand exactly what was happening, responded appropriately to all questions posed to her, was provided with shade and water, and that while she may have been under the influence of some substance, it was not significant enough to indicate that defendant did not know what was going on. We find no error in the trial court's conclusions, given the testimony presented at the *Walker* hearing.

Nevertheless, defendant contends that Trooper Roskam's veracity is in question, given some differing testimony that he provided at defendant's trial. Specifically, at trial, Trooper Roskam testified that he read defendant her *Miranda* rights *after* he handcuffed her. However, it was not made clear at the *Walker* hearing that defendant made incriminating statements before or after she was read her Miranda rights. Trooper Roskam testified at the hearing that defendant was not placed in handcuffs until he arrested her, and that "statements" were made to him after she was advised of her *Miranda* rights. Trooper Roskam testified that while he was transporting defendant to the jail in his patrol car, she continued to make statements to him. Trooper Roskam specifically testified that defendant made incriminating statements to him after her rights were read to her. At trial, Trooper Roskam testified that defendant "eventually" admitted to using methamphetamine and acknowledging that she had some in her vehicle. Trooper Roskam also testified that while in the patrol car on the way to the jail, defendant and he talked more about methamphetamine and that defendant advised him that she had used the substance the night before. He testified that "[w]hen I was asking her more about the meth, after she did give admissions that's she was aware

-6-

of it . . . ." Moreover, at trial Trooper Roskam is explaining what the jury is being shown in the video of his encounter with defendant and he explained that she was being handcuffed and that he was reading her *Miranda* rights to her, which she acknowledged. As the video continued, Trooper Roskam explained that he was then asking her about a substance he found in her car that appeared to be suspected heroin and that she told him that it was actually methamphetamine. Thus, it appears that defendant made incriminating statements about methamphetamine to Trooper Roskam after he read her *Miranda* rights to her. As a result, the trial court's factual findings made at the *Walker* hearing were not clearly erroneous and defendant's Due Process rights were not violated. *Daoud*, 462 Mich at 629.

## III. OFFENSE VARIABLE 19

Defendant next asserts that she is entitled to resentencing because the trial court improperly scored offense variable (OV) 19. Defendant specifically argues that she did not interfere with the administration of justice, and therefore OV 19 should have been assessed at zero points rather than 10 points. We disagree.

"The interpretation and application of the sentencing guidelines present questions of law that [this Court] review[s] de novo." *People v Laidler*, 491 Mich 339, 342; 817 NW2d 517 (2012). Factual determinations relating to scoring variables used for sentencing are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017).

OV 19 is applicable when, in part, an offender "attempt[s] to interfere with the administration of justice." MCL 777.49. When this occurs, OV 19 is properly scored at 10 points. MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). OV 19 provides for the " 'consideration of conduct after completion of the sentencing offense,' [and therefore,] conduct that occurred after an offense was completed may be considered when scoring the offense variable." *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010) (citation omitted).

In this case, defendant's interference with the administration of justice occurred when she refused to give Trooper Roskam her name or identification at the beginning of the traffic stop, then refused to exit her vehicle, forcing Trooper Roskam to open her door. Defendant also initially denied knowing about the drugs and drug paraphernalia found in her car.

According to Trooper Roskam, during the traffic stop for defective equipment, defendant "[r]efused to cooperate, [and] pretty much ignored any questions" she was asked, including a request for her identification. Defendant only cracked her car window "two or three inches." Because defendant would not cooperate, Trooper Roskam had to call for backup. Trooper Roskam testified that after defendant refused to comply with his order to exit her vehicle, he reached into the car to unlock the door and defendant rolled his arm up in the window. Trooper Roskam had to reach through the rear door to unlock the driver's door and open it. Defendant eventually exited the vehicle. When confronted with the drugs and drug paraphernalia found in her car, defendant initially denied that it was hers or that she knew it was there.

"OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). For example, in *People v Barbee*, 470 Mich 283; 681 NW2d 348 (2004), our Supreme Court found that a defendant providing police with a false name during a traffic stop constitutes an interference with the administration of justice. It determined that "investigating crime is critical to the administration of justice" and that the defendant impeded that process by giving a false name to the police. Similarly, here defendant impeded the investigative process by failing to comply with Trooper Roskam's orders to provide her name and exit the vehicle, as well by denying knowledge of the items found in her car. We therefore conclude that the trial court did not err in its assessment of 10 points for OV 19.

## IV. DOUBLE-DRUG PENALTY

Defendant's final argument on appeal is that she is entitled to resentencing because the trial court erroneously considered and/or misconstrued her prior record when imposing sentence. We disagree.

During sentencing, the trial court stated:

in looking at your criminal history, you have a possession of methamphetamine in 2010, possession on probation for 12 months, I would be surprised if you weren't offered programming then.

There was another possession of methamphetamine in 2015. You were on probation there. I wouldn't be surprised if you were offered some type of programming then.

So, we are — your third conviction, the one conviction was a 74-11[sic].[2] This is your third contact with the criminal justice system in regards to a delivery manufacture of methamphetamine, in addition you have another possession of methamphetamine trial coming up in October.

You have a significant problem with methamphetamine. The Court believes that in addition to using, that you also deliver. And the testimony at the jury trial was clear, there was no doubt in this Court's mind that the jury's decision was correct.

Based on that, I believe incarceration with the department of corrections is appropriate. This was a double drug penalty. The Court believes that the sentencing guidelines should be doubled.

MCL 333.7413(1) provides for enhanced sentencing for defendants convicted of a second or subsequent controlled substance offense. It states that "[e]xcept as otherwise provided in

---

[2] MCL 333.7411.

-8-

subsection (2) an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both."[3]  MCL 333.7413(1).  MCL 333.7413(1) "authorizes the trial court to double both the minimum and maximum sentences in order to double defendant's term otherwise authorized." *People v Lowe*, 484 Mich 718, 731-732; 773 NW2d 1 (2009) (quotation marks omitted).

Defendant's presentence investigation report establishes that defendant was convicted of possession of methamphetamine in 2010, and again in 2015.  Defendant argues that her 2010 conviction for possession of methamphetamine was not a valid conviction to utilize MCL 333.7413(1) on the basis of it being an MCL 333.7411 deferral.  Defendant is correct that this was not to be used as a conviction for purposes of imposing sentencing under MCL 333.7413. However, because defendant did not object to her sentence on this basis, we review this issue for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).   Where defendant admits that she was convicted in 2015 of possession of methamphetamine, that conviction alone is sufficient in implementing MCL 333.7413(1) and defendant has thus not established that any error in counting her 2010 offense as a conviction affected her substantial rights.  This is especially so, given that that trial court's reference to the 2010 offense appears to have been to emphasize defendant's long and unresolved issue with methamphetamines.

In addition, although defendant's prior convictions were not for delivery manufacture of methamphetamines, but rather for possession of methamphetamine, this has no bearing on the trial courts discretion to implement the "double-drug penalty."  MCL 333.7413(4) only requires the subsequent conviction to be "relating to a narcotic drug," it does not have to be the same offense charged or convicted.   While defendant also takes issue with the trial court's mention of defendant's upcoming additional possession of methamphetamine trial, this appears to have only been used by the trial court to further emphasize defendant's "significant problem with methamphetamine."

Finally, defendant contends that the trial court imposed the "double-drug penalty" in vindictiveness for her refusal to admit her guilt.  However, defendant had asked the court to sentence her to probation under a special "swift and sure" sanctions program.  This program was not recommended in her pre-sentence investigation report (PSIR), and the trial court explained that such a program did not work for "people who say they did not commit any crimes."  The trial court then recounted defendant's encounters with the law for crimes concerning methamphetamines. Thus, there is no indication that the trial court imposed the "double-drug penalty" due to defendant's refusal to admit her guilt.  Although not statutorily required to do so (and the defendant

---

[3] MCL 333.7413(4) states that:

> For purposes of subsection (1), an offense is considered a second or subsequent offense, if, before conviction of the offense, the offender has at any time been convicted under this article or under any statute of the United States or of any state relating to a narcotic drug, marihuana, depressant, stimulant, or hallucinogenic drug.

raised no argument suggesting such a requirement), the trial court sufficiently explained its reasons for imposing the "double-drug penalty" as defendant's long history with methamphetamine (and upcoming trial on yet another charge) and multiple contacts with law enforcement due to methamphetamines. The trial court opined that defendant had a significant problem with methamphetamine, and the record and PSIR bore out that her prior contacts with police and punishments for use of the substance had not deterred her from continued violations of the law. Because defendant had a prior conviction of possession of methamphetamine, the trial court did not improperly rely upon or misconstrue defendant's prior record when imposing the sentence and did not err in implementing the term of imprisonment which doubled defendant's term otherwise authorized by statutory guidelines.

Affirmed.


/s/ Deborah A. Servitto
/s/ Anica Letica