# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
February 9, 2016

v

JOHN EDGAR COMFORT,

        Defendant-Appellant.

No. 325330
Gratiot Circuit Court
LC No. 13-006816-FC

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his *nolo contendere* plea to first-degree criminal sexual conduct, MCL 750.520b(2)(b) (victim under 13 years old) (CSC I), in exchange for the dismissal of one count of second-degree criminal sexual conduct, MCL 750.520c(2)(b) (victim under 13) (CSC II), and a second-offense habitual offender enhancement, MCL 769.10. Defendant was sentenced to 25 to 50 years in prison. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2013, defendant was charged with CSC I and CSC II. The charges related to an incident where defendant performed oral sex on a boy under the age of thirteen. The charges were later amended to include defendant's status as a second-offense habitual offender, MCL 769.10.[2] Defendant eventually pleaded *nolo contendere* to CSC I in exchange for the dismissal of the CSC II charge and the second-offense habitual offender enhancement.

After the trial court accepted defendant's plea, but before sentencing, defendant submitted a handwritten note to the trial court stating that he "was wrongfully accused," "should be mentally evaluated," "should be in a home or something different," and only "kind-of"

---

[1] *People v Comfort*, unpublished order of the Court of Appeals, entered February 18, 2015 (Docket No. 325330).

[2] Defendant had pleaded guilty in 1993 to attempted CSC I, MCL 750.520b(2)(b), for an offense involving a young male, and was placed on probation for five years.

understood the charges against him. After sentencing, defendant moved to withdraw his plea, arguing that it "was not voluntary, knowing, and intelligent because he was not competent to know the consequences of his no contest plea" as a result of having sustained a closed-head injury when he was seven or eight years old, as well as "suffer[ing] a stroke four years ago which has impaired his cognitive abilities, use of language, and memory." He asserted that "he has no memory of the alleged offense and believes he is innocent of the crime," and "does not remember discussing his options with trial counsel and cannot explain why he chose to accept the plea in this case." He also asserted that it was his "understanding that he might be placed in a nursing home because of his mental and physical health problems." Defendant additionally argued that defense counsel provided ineffective assistance by failing "to adequately explain the direct consequences of the plea" and by failing to request a competency evaluation.

Four reports from the Michigan Department of Corrections were admitted into evidence during the hearing held on the motion, including a qualified mental health professional evaluation that stated that defendant's full scale IQ is 67 and that his "Functioning Levels" are generally mildly or moderately impaired. The report further stated that aside from his "low average non-verbal reasoning ability" being in the 18th percentile, defendant's test scores generally fell "at the second percentile or lower," which "suggest[s] that 98 to 99% of his same age peers scored considerably higher on similar tests." It was defendant's position that given his low cognitive ability, his plea was not understandingly, knowingly, and voluntarily made.

In addition to his own testimony, a friend of defendant testified that she had been "his power of attorney for finances and medical" for approximately 8 to 10 years. She further opined that defendant has the mental capacity of a 13- to 14-year-old, which she claimed to have told to defendant's trial counsel. She testified that she had concerns about the decision to plead, explaining that "if someone said . . . this is in your best interest, [defendant] would have said okay without questioning why or what's going on or what are my other possibilities." She testified that after speaking with defendant, she did not "think [defendant] totally understood" his sentence, and "in [her] opinion, [defendant] thinks he is going to walk out today and go into a nursing home." When asked whether he "notice[d] any cognitive or intellectual limitations" in his meetings with defendant, defendant's trial counsel answered, "Not that would . . . concern me to think that he was incompetent. I think he might have been slow, but that was about it."

The trial court denied defendant's motion. While the trial court recognized that defendant "obviously, deals on a daily basis with some significant mental impairments that are moderate in nature," it nonetheless concluded that defendant was competent and that his plea was made understandingly, knowingly, voluntarily, and accurately. The trial court noted defendant's ability to communicate in his interactions with the court, as well as the facts and circumstances of the case and the fact that defendant was informed of the mandatory 25-year minimum sentence for the CSC I conviction. Ultimately, the court concluded, "as I look at those reports, including even the raw IQ scores, I'm satisfied that they don't demonstrate somebody who is unable to understand the nature of the proceedings and their consequences and who is unable to understand his rights and the fact that the plea gave them up."

This appeal followed.

## II. DENIAL OF MOTION TO WITHDRAW PLEA

On appeal, defendant again argues that his plea was not understanding and voluntary. We disagree. "When a motion to withdraw a guilty plea is made after sentencing, the decision whether to grant it rests within the sound discretion of the trial court" and "will not be disturbed on appeal unless there is a clear abuse of discretion resulting in a miscarriage of justice." *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). A trial court's factual findings are reviewed for clear error. *Id*. at 646-647. Questions of law, including the interpretation and application of statutes and court rules, as well as constitutional issues, are reviewed de novo. *Id*.; *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014).

A defendant who pleads *nolo contendere* admits "all the essential elements of a charged offense." *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). It "is tantamount to an admission of guilt for the purposes of the criminal case." *Id*. There is no absolute right for a defendant to withdraw a guilty or *nolo contendere* plea after it has been accepted. *People v Harris*, 224 Mich App 130, 131; 568 NW2d 149 (1997).

A court may not accept a plea of guilty or *nolo contendere* unless it "is understanding, voluntary, and accurate." MCR 6.302(A); see also US Const, Am XIV; Const 1963, art 1, § 17; *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009) (citation omitted); *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 2d 162 (1970). For a plea to be understanding, the defendant must be informed of the maximum possible prison sentence, as well as any mandatory minimum sentence required by law. MCR 6.302(B)(2); *People v Brown*, 492 Mich 684, 689; 822 NW2d 208 (2012). For a plea to be voluntary, the terms of the plea agreement must be disclosed, and the plea must be "defendant's own choice." MCR 6.302(C)(4)(c).[3]

In this case, the trial court properly concluded that defendant's plea was understanding and voluntary. It is clear that defendant's full-scale IQ was scored 67, and, according to his mental health evaluation, he "demonstrates mild to moderate declines in most cognitive areas," "[h]is performance on the [B]ender[-G]estalt test was highly indicative of brain impairment," and his "lowered performance on these psychological tests likely suggests receptive and expressive aphasia secondary to his history of cardio-vascular issues." Receptive and expressive aphasia relates to defendant's claim that he failed to both understand the plea process and articulate that lack of understanding while being agreeable through the plea process. These factors do raise a concern about defendant's level of intellectual functioning. However, "[l]ow mental ability in and of itself is insufficient to establish that a defendant did not understand his rights." *People v Cheatham*, 453 Mich 1, 36; 551 NW2d 355 (1996). "A defendant's IQ . . . is

---

[3] Defendant does not argue that the trial court lacked a factual basis for accepting his plea, i.e. that his plea was not accurate. MCR 6.302(D); *Plumaj*, 284 Mich App 645 at 648 n 2.

only one factor in the 'totality of circumstances' a court must consider in assessing whether a defendant has the requisite level of comprehension." *Id*.

And there is nothing about the proceedings themselves that raises a question about the validity of the plea. Defense counsel testified that he discussed with defendant the charges, the elements of the crimes at issue, the possible sentence, and defendant's options. Counsel testified that he believed defendant understood these factors. As counsel testified, the fact that defendant confessed to police and was observed committing the act at issue by someone other than the victim, coupled with the fact that he had previously been convicted of a similar crime, presented very strong evidence of defendant's guilt and left defendant with limited options. Further, defendant's response to the court's numerous inquiries about his understanding of the various aspects of the plea process, and his intensions with respect to them, were clear, lucid, and unequivocal. Although defendant later claimed to believe that he would go to a nursing home rather than prison, he stated at the plea hearing that he understood the sentence he faced. A defendant is not permitted to claim that he or she was confused about the consequences of a plea after stating on the record that he or she understood the same. *People v Everard*, 225 Mich App 455, 460-461; 571 NW2d 536 (1997). The trial court thus did not err in denying defendant's motion to withdraw his plea.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective in failing "to adequately explain the direct consequences of the plea" and in failing to request a competency evaluation. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Factual findings are reviewed for clear error; questions of constitutional law are reviewed de novo. *Id*.

"To establish ineffective assistance of counsel, a defendant must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Effinger*, 212 Mich App at 69, citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). When a defendant is represented by counsel during the plea process and enters a plea based on counsel's advice, the voluntariness of such a plea depends on whether counsel's advice was within the range of competence required by attorneys in criminal cases. *Hill v Lockhart*, 474 US 52, 56; 106 S Ct 366; 88 L Ed 2d 203 (1985). With respect to such advice, "[t]he determination to be made is whether the defendant tendered the plea voluntarily and understandingly," "not whether a court would, in retrospect, consider counsel's advice to be right or wrong, but whether the advice was within the range of competence demanded of attorneys in criminal cases." *Effinger*, 212 Mich App 70.

Defense counsel testified that, based on his experience, he felt as though defendant understood the plea and its consequences after meeting with him. Further, defendant's testimony did not fully contradict that of his counsel. For example, defendant stated that he "believe[d]" he and defense counsel discussed his "options" and admitted that he understood he would be sentenced to a minimum of 25 years. Counsel further testified that he did not believe that defendant presented any competency issues, and this was supported by the plea hearing

-4-

transcript. To the extent that defendant's actions or testimony contradicted that of defense counsel, the trial court is better-suited to assess the credibility of the witnesses appearing before it. See *People v Sexton* (*After Remand*), 461 Mich 746, 752; 609 NW2d 822 (2000).

Defendant also argues that defense counsel was ineffective in failing to address defendant's letter to the trial court requesting that he be able to withdraw his plea. However, the record indicates the exact opposite. Defense counsel testified that he discussed the note with defendant, and that the decision was made to proceed with sentencing. At the hearing on defendant's motion, defendant admitted that defense counsel discussed the letter with him, and he answered, "I guess," when asked at the hearing whether he decided to "go ahead and be sentenced anyhow." Defendant was able, in any event, to submit his letter to the trial court.

Further, even assuming arguendo that his counsel's conduct was objectively unreasonable, defendant has failed to articulate how he was prejudiced by defense counsel's alleged shortcomings. Defendant claims that "there is a reasonable likelihood that [he] would have sought to withdraw the plea and the court would have granted the request" were it not for his counsel's conduct. In support of this claim, defendant asserts that his claim of actual innocence would have provided a reason for the trial court to accept his plea withdrawal under MCR 6.310(B). However, MCR 6.310(B)(1) does not require that a trial court allow a voluntary, understanding, and accurate plea to be withdrawn because of a claim of actual innocence; it merely states that "a plea may be withdrawn . . . only in the interest of justice." A defendant's claim of actual innocence, combined with inaccurate legal advice, may in some circumstances support the withdrawal of a plea under MCR 6.310(B)(1). See *People v Spencer*, 192 Mich App 146, 151; 480 NW2d 309 (1991). However, here, unlike in *Spencer*, defendant has not demonstrated any inaccurate legal advice given to him by his counsel; nor is his claim of actual innocence supported by the record. In fact, had defendant gone to trial, the evidence against him, including his confession, an eyewitness, and the victim's testimony, was strong; further, if convicted at trial, defendant faced the same mandatory minimum sentence for CSC I, plus additional charges; he therefore could not have received a lesser sentence had he proceeded to trial and been convicted there. We therefore conclude that defendant has not demonstrated a reasonable probability that, but for his counsel's actions, the outcome of the proceedings against him would have been different. *Effinger*, 212 Mich App at 69.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray