# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHELLE RENAE MONTREUIL,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2017

No. 330141
Monroe Circuit Court
LC No. 15-041904-FH

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of operating or maintaining a laboratory to manufacture methamphetamine, MCL 333.7401c(2)(f), operating or maintaining a laboratory to manufacture methamphetamine in the presence of a minor, MCL 333.7401c(2)(b), and fourth-degree child abuse, MCL 750.136b(7). Defendant was sentenced to 36 to 240 months' imprisonment for the operating or maintaining a laboratory to manufacture methamphetamine and operating a laboratory to manufacture methamphetamine in the presence of a minor convictions, and 365 days in the Monroe County Jail for the fourth-degree child abuse conviction. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal arises out of a raid on defendant's home in Newport, Michigan, in the afternoon on February 19, 2015. Members of the Monroe Area Narcotics Team and Investigative Services ("MANTIS") unit executed a search warrant on defendant's home. Approximately 20 minutes into the raid, Detective Sean Street interviewed defendant in a back bedroom, at which time defendant made incriminating statements.

Before trial, defendant filed a motion to suppress the statements that she made to Detective Street, arguing that there is no indication that she voluntarily, knowingly, and intelligently waived her Fifth Amendment rights. The trial court held a *Walker*[1] hearing, during which Detective Street, Detective Sergeant Scott Beard, and defendant testified regarding the

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

circumstances surrounding her interview with the police. The trial court denied defendant's motion to suppress, finding that she was provided *Miranda*[2] warnings and that she signed and dated the *Miranda* waiver. Additionally, the trial court concluded that the totality of the circumstances included no indication that defendant's waiver of her *Miranda* rights was involuntary. Rather, the court found that defendant knowingly, intelligently, and voluntarily waived her rights and provided a statement to the police.

The trial court noted defendant's age; the length of the questioning; the fact that defendant was not deprived of food, sleep, or medical attention; the fact that defendant was not physically abused; its finding that defendant was not threatened or coerced; the officers' testimony regarding defendant's overall demeanor and ability to comprehend the situation; and the fact that Detective Street allowed defendant to attend to her children before they were taken to the hospital. The court also found that Detective Beard's statements were wholly appropriate and expressly stated that it doubted defendant's credibility, especially in light of her "convenient" and "self[-]serving" testimony.

Subsequently, defendant was convicted and sentenced.

## II. VOLUNTARINESS OF DEFENDANT'S CONFESSION

Defendant argues that the trial court erroneously denied her motion to suppress because the waiver of her *Miranda* rights and confession to Detective Street were involuntary.[3] We disagree.

### A. STANDARD OF REVIEW

We review *de novo* questions regarding the voluntariness of a confession or a *Miranda* waiver. *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012); *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). When reviewing a trial court's determination of voluntariness, we must examine the whole record and make an independent determination. *People v Sexton*, 458 Mich 43, 68; 580 NW2d 404 (1998); *Gipson*, 287 Mich App at 264. However, "we review a trial court's factual findings for clear error and will affirm the trial court's findings unless left with a definite and firm conviction that a mistake was made." *Gipson*, 287 Mich App at 264. We give deference to the "trial court's assessment of the weight of the evidence and the credibility of the witnesses." *Id*.

### B. ANALYSIS

To admit a confession in its case in chief, the state bears the burden of proving that the confession was voluntarily given by the defendant, thereby

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] Although defendant argued in the trial court that the waiver of her *Miranda* rights was not knowing, intelligent, or voluntary, defendant only argues on appeal that the waiver and her confession were involuntary.

fulfilling the due process guarantee of the Fourteenth Amendment. In addition, if the confession was the result of custodial interrogation, the state must prove that the police properly informed the defendant of his *Miranda* rights and obtained a valid waiver. [*People v Cheatham*, 453 Mich 1, 13; 551 NW2d 355 (1996) (opinion by BOYLE, J.) (citation omitted).]

See also *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000); *Gipson*, 287 Mich App at 264 ("Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights."), citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The prosecution has the burden of proving that a waiver was voluntary by a preponderance of the evidence. *Daoud*, 462 Mich at 634. We utilize the same inquiry in determining whether a defendant's confession was voluntary in accordance with Fourteenth Amendment due process principles and whether a defendant voluntarily waived her Fifth Amendment rights. *Id*. at 635; *Cheatham*, 453 Mich at 17 (opinion by BOYLE, J.); *id*. at 48-54 (CAVANAGH, J., concurring in part).

"A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Gipson*, 278 Mich App at 264-265. Likewise, "[t]he test of voluntariness [is] whether, considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired . . . .' " *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988), quoting *Culombe v Connecticut*, 367 US 568, 602; 81 S Ct 1860, 1879; 6 L Ed 2d 1037 (1961). The critical distinction is the point " 'at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.' " *Id*. at 334, quoting *Culombe*, 367 US at 602. Accordingly, "whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *Daoud*, 462 Mich at 635.

In order to ascertain whether a statement was freely and voluntarily made, we examine the totality of the circumstances by considering the factors set forth by the Michigan Supreme Court in *Cipriano*, 431 Mich at 334. *People v Sexton*, 461 Mich 746, 752; 609 NW2d 822 (2000). These nonexclusive factors include:

the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Cipriano*, 431 Mich at 334.]

A court should consider the defendant's overall mental and physical state and any promises of leniency. *Gipson*, 287 Mich App at 264. No single factor is conclusive, *Sexton*, 461 Mich at

753; *Cipriano*, 431 Mich at 334, but "the voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct," *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997).

On appeal, defendant contends that her waiver was involuntary for a number of reasons. She states that she felt threatened and scared due to the fact that her home was raided by a large number of officers who were dressed in "haz [sic] mat suits, including oxygen masks," and were pointing "long guns . . . at her and her children." Defendant's children were crying, and she was " 'scared crapless.' " She claims that her fear was further increased by the fact that she then was separated from her children, interrogated by Detective Street, berated by Detective Sergeant Beard, and told that the police would ensure that child protective services ("CPS") took her children, and that she would never get them back, if she did not cooperate. She also contends that Detective Street told her that her father could pick up her children and that she relied on that statement, but CPS subsequently intervened, taking away her children in an ambulance for testing. Moreover, defendant argues that her waiver was involuntary because she was under the influence of Valium at the time of the raid and interrogation, as demonstrated by her limited memory of the incident. We reject defendant's claims. Considering the totality of the circumstances and the trial court's credibility determinations, we agree with the trial court that the evidence admitted at the *Walker* hearing shows that defendant voluntarily waived her *Miranda* rights and voluntarily spoke with the police.

Defendant was 31 years old when the raid occurred. She attended high school until the 10th or 11th grade, and her testimony at the *Walker* hearing clearly confirms she is able to read and understand written English. Detective Street testified that defendant was alert and cooperative throughout the incident, even though she had been subjected to a significant raid on her home. Detective Street also testified that he read the written *Miranda* warning and waiver form provided by the Michigan State Police to defendant, and that defendant read the form herself before initialing each paragraph and signing the form to confirm that she understood her rights. Detective Street testified that defendant did not exhibit any difficulty understanding her rights, and she did not ask any questions. Rather, she chose to speak with Detective Street. Notably, defendant acknowledged at the *Walker* hearing that her initials and signature appeared on the *Miranda* form, even though she denied any memory of it.

Furthermore, the interview was not long, lasting 15 to 20 minutes according to the police and 45 minutes according to defendant. Defendant was not handcuffed or restrained in any way, and there is no dispute that Detective Street allowed defendant to assist her child in the other room during the interview. She also was not denied medication, sleep, food, or drink. Notably, even though numerous officers initially entered the home with raid gear, the interview did not begin until at least 15 or 20 minutes after the officers initially entered the residence, according to both defendant and the detectives.[4]

---

[4] Defendant believed that she was in the living room for approximately 45 minutes before she was interviewed in the bedroom.

There is no evidence that Detective Street, who conducted the full interview, ever raised his voice to defendant during the interview. There was testimony that Detective Beard entered the bedroom unannounced and stated his belief, in a raised voice, that defendant was being untruthful and should admit her involvement with the methamphetamine use and production in the household. However, this interaction was extremely brief according to the officers as well as defendant, lasting no longer than a minute or two. There is no evidence of physical force or coercion. Although defendant seemed to indicate that the police threatened her by stating that they would make sure that her children were permanently taken away if she did not cooperate, both detectives testified that they did not threaten defendant in any way in order to procure a statement. Likewise, contrary to defendant's testimony, the police denied making any promises of leniency during the interview. The trial court found the officers' testimony more credible than defendant's self-serving and "convenient" testimony, and we must defer to this determination. See *Gipson*, 287 Mich App at 264.

As defendant notes, the testimony confirms that Detective Street initially believed that he could make arrangements for defendant's children to be placed with her father, and that he discussed this possibility with defendant.[5] However, Street explained that he subsequently learned from CPS that such an arrangement was impermissible in this case. Consistent with CPS policies, the agency intervened and required the children to be transported by ambulance to a hospital in order to be tested and observed given the allegations of methamphetamine use and production in the household. In light of this evidence, we find no basis for concluding that Detective Street's failed attempt to place defendant's children with her father amounted to coercion.

Moreover, although defendant testified that she was under the influence of Valium during the raid and interview, Detective Street testified, based on his experience as a narcotics officer and his numerous past encounters with people who were intoxicated, that defendant did not show any signs of intoxication. To the contrary, Detective Street testified that defendant appeared "very alert" and oriented to time and place throughout their conversation. "Intoxication from alcohol or other substances can affect the validity of a waiver of Fifth Amendment rights, but," like the other factors, it is not dispositive. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). As we reasoned in *Tierney*:

> In concluding that defendant voluntarily waived his Fifth Amendment right, the trial court analyzed the *Cipriano* factors and the evidence it found most credible. The facts found by the trial court had support in the record, and those findings do not compel a legal conclusion that defendant's intoxication or state of mind caused his waiver to be anything other than voluntary. *Although evidence was presented that defendant was both suicidal and intoxicated at the time he gave his out-of-court statements, this evidence is far outweighed by the rest of the evidence presented.* Defendant is a college-educated adult who has experience with the criminal justice system. He was not threatened, harmed, or denied any of the

---

[5] According to Detective Street, this conversation occurred after the interrogation.

basic necessities he required, including medical care. He was twice advised of his rights. *Although intoxicated, defendant was coherent and rational, he understood the questions posed to him and answered them appropriately, and he was able to assist officers in creating a written record of the interview. As noted, intoxication is only one of at least eleven factors to be considered in determining whether a defendant's waiver of his constitutional rights is voluntary, and no one factor is dispositive.* Assessing the totality of the circumstances, the trial court correctly determined that defendant's waiver of his Fifth Amendment right was voluntary. [*Id*. at 708-709 (citation omitted; emphasis added).]

Similarly, here, for the same reasons previously discussed, defendant's testimony regarding her intoxication during the interview is far outweighed by the other evidence showing that she voluntarily waived her Fifth Amendment rights and voluntarily provided a statement to the police. Her testimony that she took Valium shortly before the raid is not dispositive.

Given the evidence in the record and the trial court's credibility determinations, the court did not clearly err in failing to suppress defendant's statements to Detective Street. The prosecution presented sufficient evidence for the trial court to find, by a preponderance of the evidence, that defendant had voluntarily waived her Fifth Amendment rights and voluntarily provided a statement to the police. See *Cipriano*, 431 Mich at 334.

### III. CONCLUSION

Defendant has failed to establish that she is entitled to relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-6-