*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ELIZABETH ANNE DANDAN,

        Plaintiff-Appellant,

v

SAAR DANDAN,

        Defendant-Appellee.

UNPUBLISHED
May 23, 2025
9:28 AM

No. 364860
Isabella Circuit Court
Family Division
LC No. 22-017876-DO

---

Before: MARIANI, P.J., and MALDONADO and YOUNG, JJ.

PER CURIAM.

Plaintiff appeals by right the judgment of divorce ending the parties' marriage. Plaintiff argues that the trial court erred by declining to find that the parties' marriage was based on fraud perpetrated by defendant to gain immigration benefits. Plaintiff asks this Court to remand the matter to the trial court with instructions to make "directed findings on whether the marriage was fraudulent, allow the presentation of testimony and evidence regarding this issue, or alternatively, find that there was fraud in the inducement to marry." We affirm.

## I. THE JUDGMENT OF DIVORCE

Plaintiff, a United States citizen, testified that she met defendant, an Arab immigrant from Israel, in May of 2015, and "fell head over heels for him." On July 18, 2015, the couple had an Islamic wedding. Plaintiff added defendant's name to the title on her house, her utility accounts, her life insurance, and her bank account, and in April 2016, the parties initiated the process for obtaining permanent residency, or a "green card," for defendant with the United States Citizenship and Immigration Services (USCIS). Plaintiff explained that the green card was "a two-year conditional," such that, after two years, the parties had to demonstrate an actual marital relationship—meaning they had married for love, lived together as a couple, and merged their assets. According to plaintiff, during those first two years of marriage, the parties had a "very full, happy life," and she was "very invested." They celebrated all the holidays, provided a home for an exchange student, and traveled together. After plaintiff demonstrated that she had sufficient income to support defendant, she was approved as defendant's sponsor, which required her to sign

an I-864 Affidavit of Support. After an interview in the fall of 2018, USCIS told the parties that they would be approved and defendant would get his green card.

Plaintiff alleged that, after defendant received his permanent green card, his behavior changed, and he told her that he had never loved her and had married her only as a way of obtaining his green card. In the proceedings below, plaintiff testified about many alleged incidents of defendant's change in behavior, and his mistreatment of her after he received his green card. Plaintiff alleged that defendant called her various pejoratives and engaged in incidents of adultery, and asserted that this change in his behavior was evidence that he had fraudulently married her.

Defendant denied having married for such cynical reasons or having called plaintiff names and testified that it was only after the couple began fighting that he wanted out of the marriage. Neither party presented any witnesses or documents to support their conflicting allegations.

The trial court found that there was "fault on both sides," held neither party primarily responsible for the failure of the marriage, and included no language regarding fault in the judgment of divorce. The trial court stated to plaintiff, "If you're responsible down the road under the federal rules, that's the risk you took when you married him and . . . remained married for seven years," and added, "I don't find that it was a fraudulent sham marriage." The trial court observed that plaintiff "was asking for an annulment basically," but "never pled an annulment, which is what should've probably been done." The court granted the divorce and awarded each party their own personal property, retirement accounts, and debts, and awarded no spousal support.

On appeal, plaintiff contends that there was clear and convincing evidence that defendant fraudulently induced plaintiff to marry him, and that the court erred by not issuing such a finding. We disagree.

A trial court's factual findings are reviewed on appeal for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). The reviewing court must afford deference to the trial court's credibility determinations. MCR 2.613(C); *In re Newman*, 189 Mich App 61, 65; 472 NW2d 38 (1991). Accordingly, if resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, this Court will defer to the trial court's superior opportunity to evaluate such matters. *People v Sexton*, 461 Mich 746, 752; 609 NW2d 822 (2000). "A finding is 'clearly erroneous' [if,] although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The issue of defendant's motives for marrying came down to a classic he said-she said credibility contest, with no witnesses or documentation supporting either party's positions. Plaintiff's protestations regarding defendant's marital motives, relying entirely on her own account of events, do not leave us with a definite and firm conviction that a mistake was made. We, therefore, afford due deference to the trial court.

## II. ADDITIONAL ISSUES

Plaintiff also raises two additional issues on appeal. First, plaintiff asks this Court to declare that she "can be relieved of her obligations under the I-864 given the fraudulent nature of

the marriage."  Second, plaintiff asks this Court to "find that the marriage should be annulled and the Judgment of Divorce amended to stand as an annulment."  We decline to declare plaintiff entitled to a remedy that is without legal underpinning.

## A.  THE I-864 AFFIDAVIT OF SUPPORT

8 USC 1183a(a)(1) sets forth the requirements for a sponsor's affidavit of support.  Subsections (a)(1)(A), (a)(2), and (a)(3) address the five conditions under which the enforceability of the I-864 Affidavit of Support ends.  The corresponding regulations in 8 CFR 213a.2 provide additional guidance.

More specifically, the recent case of *Mao v Bright*, 645 F Supp 3d 805 (SD Ohio, Dec 9, 2022), outlines the pertinent law to address plaintiff's issues.  Because federal law prohibits the entry of immigrants who are likely to become dependent on public benefits, the federal government requires a sponsor to sign an affidavit, in which the sponsor agrees to provide financial support in accordance with USC 1183a(a)(1)(A).  *Mao*, 645 F Supp 3d at 809.  "The Affidavit of Support is a legally-binding contract between the federal government and the sponsor, and may be enforced by the immigrant, who is the third-party beneficiary."  *Id.*, citing 8 USC 1183a(a)(1)(B).

> The sponsor's financial obligation continues until one of the five termination events occurs: (1) the beneficiary becomes a U.S. citizen; (2) the beneficiary can receive credit for 40 quarters of work under the  Social Security Act; (3) the beneficiary is no longer a permanent resident and has departed the United States; (4) the beneficiary is subject to an order of removal but receives a new grant of adjustment of status based on a new affidavit of support; or (5) the beneficiary dies.  [*Mao*, 645 F Supp 3d at 809, citing 8 CFR 213a.2(e)(2)(*i*).]

"The I-864 Affidavit of Support specifically states that divorce does not terminate the sponsor's financial obligation."  *Mao*, 645 F Supp 3d at 809.  An immigration sponsor "need not be the spouse or intended spouse of the immigrant."  *Id.* at 811.  "The parties' marital status is therefore largely irrelevant to an I-864 claim."  *Id.*  Even if the immigrant has waived the right to spousal support under state law, it "cannot be construed as a waiver of [the immigrant's] right to enforce [the sponsor's] financial obligations under the I-864 Affidavit of Support."  *Id.*  Spousal support is "completely separate" from the financial obligations of an immigration sponsor.  *Id.* at 812.  That is because termination of the sponsor's financial obligation "through a separate agreement with the immigrant would . . . defeat the Form I-864's purpose of preventing admission of an immigrant that is likely to become a public charge at any time."  *Id.* at 811 (quotation marks and citation omitted).  Further, 8 USC 1183a "does not give the sponsor any enforcement right or other cause of action."  *Ibrhim v Abdelhoq*, 676 F Supp 3d 575, 577 (2023).  It is therefore apparent that, no matter what the trial court had included in the judgment of divorce, plaintiff remains obligated under the I-864 that she signed, except through one of the five events stated in 8 CFR 213a.2(e)(2)(*i*).

In *Ranjit Singh v United States*, unpublished opinion of the United States District Court for the Northern District of Ohio, issued June 21, 2022 (Case No. 1:20cv799); 2022 WL 2209544, an

appeal from the Board of Immigration Appeals, the federal district court explained the law governing I-130 petitions:

> When a United States citizen marries a non-citizen immigrant, there is a process the couple may go through to obtain permanent residence or other adjustment in immigrant status for the noncitizen spouse. *The first step in that process is a Form I-130 Petition* which, if approved, allows a citizen to obtain an immigrant visa for immediate relative. In order to guard against individuals attempting to subvert immigration laws by fraudulently claiming marriage, USCIS investigates each couple seeking approval of a Form I-130 Petition. The investigation may include interviews of the couple, their friends, and/or family. USCIS may also review the couples' financial records and consider their daily activities such as whether they live together and whether they associate with one another's friends and family. Petitioners may submit evidence of a *bona fide* marriage to USCIS throughout this process, but they are not afforded a hearing prior to USCIS issuing its decision. It is the petitioner's burden to establish eligibility in visa petition proceedings. [*Id.*, 2022 WL 2209544 at *9 (first emphasis added; citations omitted).]

8 USC 1186a(b) provides, in pertinent part, as follows:

> (1) In the case of an alien with *permanent resident status on a conditional basis* under subsection (a), if the Secretary of Homeland Security determines, *before the second anniversary* of the alien's obtaining the stays of lawful admission for permanent residence, that—
>
> (A) the qualifying marriage—
>
> (i) was entered into the for purpose of procuring an alien's admission as an immigrant, or
>
> (ii) has been judicially annulled or terminated, other than through the death of a spouse, or
>
> (B) a fee or other consideration was given (other than a fee or other consideration to an attorney for assistance in preparation of a lawful petition) for the filing of a petition under section 1154(A) of this title or subsection (d) or (petitioner) of section 1184 of this title with respect to the alien;
>
> the Secretary of Homeland Security shall so notify the parties involved and, subject to paragraph (2), shall terminate the permanent resident status of the alien (or aliens) involved as of the date of the determination. [Emphasis added.]

Accordingly, the Form I-130 Petition is the first step in the process to obtain permanent residence for a noncitizen spouse. If the petition is granted, the alien acquires conditional

permanent-resident status, and must wait two more years while continuing to demonstrate a bona fide marriage.

Plaintiff relies on *Matter of P Singh*, 27 I&N Dec 598 (BIA, 2019), an opinion released by the Board of Immigration Appeals, a section of the United States Department of Justice. In *P Singh¸* the petitioner filed an I-130 petition (or "visa petition") on behalf of the beneficiary. The Fraud Detection and National Security Office then investigated the home and family, and its director denied the visa petition upon finding that the beneficiary entered into his marriage "solely to obtain an immigration benefit for the beneficiary." *Id.* at 599-600. The petitioner never advanced to the level of signing an I-864 affidavit, because the investigation and denial occurred before a provisional green card was issued. Plaintiff's reliance on *P Singh* is therefore misplaced. She and defendant were not denied their I-130 petition, having persuaded the immigration officials that they represented a bona fide marriage. Defendant received his provisional green card when the parties married. Plaintiff testified that the parties sought a permanent green card after two years of happy marriage. At that time, plaintiff signed the I-864 Affidavit of Support, which made her defendant's sponsor, and defendant was issued his green card. Once plaintiff signed the I-864 affidavit, 8 USC 1183a(a) applied.

Similarly, plaintiff's reliance on *Matter of Monroe*, 26 I&N Dec 428 (BIA 2014), is misplaced. *Monroe* addressed whether the immigrant could avoid a waiver of deportation on the basis of extreme hardship. *Monroe* did not address any issues related to fraudulent marriage or the Form I-864 Affidavit of Support.

Again, CFR 213a.2(e)(2)(*i*) sets forth the five termination events that might release a sponsor from the obligations under Form I-864. Plaintiff has not demonstrated that she qualifies for any of them.

## B. ANNULMENT

Plaintiff also asks this Court to remand this case to the trial court with instructions to change the judgment of divorce to one granting an annulment, but we note that plaintiff did not raise the issue of annulment in the trial court, thereby failing to preserve appellate objections. See *Wells v State Farm Fire & Cas Co*, 509 Mich 855, 855; 969 NW2d 67 (2022). "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented. " *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW2d 3d 472 (2023) (quotation marks and citation omitted). We are not persuaded that any of these exceptions apply.

It was the trial court that brought up the issue of annulment, having stated that plaintiff, by raising the "issue of fault," was actually "asking for an annulment basically," and "should've probably" so pleaded. The trial court further stated that plaintiff had not cited any caselaw "establishing that an annulment on the basis of fraud is appropriate under the circumstances," and that the court had found none addressing annulment "in a situation of green card fraud."

Plaintiff contends that Michigan courts have consistently upheld the principle that, when one party is deceived into marriage, that marriage can and should be annulled to prevent further injustice. Plaintiff first cites *Gillett v Gillett*, 78 Mich 184, 189-190; 43 NW 1101 (1889), in which a marriage was annulled on the basis of fraud. Plaintiff's reliance on that case is misplaced, however. Although marriages may be annulled on the basis of fraud, as discussed, there are only five ways that the signer of an I-864 Affidavit of Support may avoid the attendant responsibilities and obligations. Because marital status does not factor into any of those five bases, changing the divorce to an annulment would not provide plaintiff with the relief that she is seeking. Therefore, declining to consider this issue further would not result in manifest injustice, nor is consideration of it necessary for a proper determination of this case.

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young