*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 30, 2019

Plaintiff-Appellee,

v

No. 340762
Macomb Circuit Court
LC No. 2016-000325-FH

JORDAN CHRISTOPHER DANSKI,

Defendant-Appellant.

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of first-degree home invasion, MCL 750.110a(2), and of taking possession and driving away a motor vehicle (UDAA), MCL 750.413. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of imprisonment of 13 years to 20 years for home invasion and 3 years to 5 years for unlawfully driving away a motor vehicle. We affirm.

## I. FACTUAL & PROCEDURAL BACKGROUND

Defendant's convictions arise from a home invasion during the early morning hours of June 24, 2015, at a home in Sterling Heights. The intruder took the complainant's purse, phone, and car keys, and drove away in her vehicle, a white Ford Focus, that contained the complainant's set of culinary knives, a gym bag containing clothes, and work-related documents. The knives, clothes, and the documents were found at two different locations in nearby Clinton Township the following day. On July 5, 2015, while driving the complainant's car, defendant crashed into an SUV parked in a driveway. When confronted by a neighbor, he abandoned the vehicle and fled on foot. The police obtained defendant's fingerprints from items inside the vehicle and later the witness identified defendant. The police arrested defendant and he eventually pleaded guilty to receiving or concealing stolen property contrary to MCL 750.535.

During a police interview on July 17, 2015, defendant "blurted out 'do you think I'm stupid, I'm not admitting to a home invasion first.' " The interviewing officer testified that no one had mentioned anything about a home invasion before defendant made this statement. The police obtained an analysis of defendant's cell phone activity for the night of June 23-24, 2015.

-1-

The analysis indicated that defendant's cell phone interacted with the cell phone tower nearest the complainant's home during the early morning hours of June 24, and interacted with other towers consistent with defendant's cell phone moving from the complainant's residence, to the location where the knife set was found, to the location where the paperwork was found, and to his home in Clinton Township. On January 5, 2016, defendant was charged with home invasion and UDAA.

Defendant presented the defense theory at trial that someone else committed the home invasion and UDAA. Defendant introduced testimony through a friend and roommate, Jenah Apolzan, that she saw defendant's deceased friend, Jeffrey Moore, who was another roommate, drive the stolen vehicle. She did not specify on what date that occurred. The defense also called its own cell phone analysis expert who presented an alternative interpretation of the cell phone usage data.

During their deliberations, the jury submitted questions to the trial court. The jury first asked: "For unlawfully driving away an automobile are we determining guilt on 6/24, or can guilt be determined on 7/5?" They also asked if they could review a transcript of a phone recording. The parties agreed to the manner in which the trial court responded to the jury's first two questions and the jury continued its deliberations. Later, the jury asked the following question: "For CJI 24.1(2), Can 'drove or took it away' be understood as the driver OR a passenger?" In response to that question, the trial court read instructions M Crim JI 24.1, related to UDAA, M Crim JI 8.1, related to aiding and abetting, and M Crim JI 8.5, related to mere presence not being enough to convict. The defense objected to the court providing the aiding and abetting instruction. The jury continued their deliberations and ultimately convicted defendant of both charged offenses.

Defendant argues that he was denied his constitutional rights to due process and trial by jury as a result of the trial court's supplemental jury instruction relating to aiding and abetting. He also argues that the prosecution presented insufficient evidence to convict him of the charged offenses. In his Standard 4 brief, defendant additionally argues that his trial counsel provided him ineffective assistance by failing to interview alibi witnesses and by not properly arguing that he was denied a speedy trial.

During the appeal process, defendant moved for an evidentiary[1] hearing on the issue of ineffective assistance of counsel and this Court granted in part and denied in part his motion and remanded to the trial court so that he could file a motion for a new trial or other relief.[2] Defendant filed a motion for a new trial and the trial court held an evidentiary hearing on August 30, 2018. Following the review of multiple affidavits and the testimony of four witnesses, including defendant and his trial counsel, the trial court concluded that defendant was not

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] See *People v Danski*, unpublished order of the Court of Appeals, entered July 25, 2018 (Docket No. 340762).

entitled to a new trial based on ineffective assistance of counsel. For the reasons set forth below, we do not find any of the assignments of error to have merit and we affirm.

## II. ANALYSIS

### A. SUPPLEMENTAL JURY INSTRUCTIONS

#### 1. STANDARD OF REVIEW

We review de novo questions of law arising from a trial court's provision of jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). We review for an abuse of discretion a trial court's determination whether a jury instruction is applicable to the facts of a case. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008) (citation omitted).

#### 2. ANALYSIS

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Jury instructions "must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). "The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (citations omitted). A trial court may give additional instructions as long as they accurately state the law and are applicable. *Mull v Equitable Life*, 196 Mich App 411, 423; 493 NW2d 447 (1992). "Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001) (citation omitted).

MCL 750.413 defines the UDAA offense as follows:

> Taking possession of and driving away a motor vehicle—Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years.

In *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (2003), this Court defined the elements of the crime of taking possession and driving away a motor vehicle as follows: (1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission. This Court explained that MCL 750.413 "does not require an intent to steal, that is, to permanently deprive the owner of his property." *Id*. at 71.

In this case, the felony complaint specified the UDAA charge as follows:

COUNT 2: MOTOR VEHICLE· UNLAWFUL DRIVING AWAY [Defendant, contrary to law,] did willfully and without authority, take possession of and drive or take away, or did assist in, or was a party to such taking possession, driving or taking away, of a motor vehicle, to-wit: A 2011 FORD FOCUS belonging to another, to-wit: AMY ARMSTRONG; contrary to MCL 750.413.

Following jury selection, the trial court provided the jury the following preliminary instruction regarding the UDAA charged offense:

And Count II, that Jordan Christopher Danski did willingly and without authority take possession of and drive away or did assist in or was a party to such taking, possession, driving or taking away of a motor vehicle, to wit a 2011 Ford Focus belonging to another, to wit, Amy Armstrong.

While the trial court did not give the aiding and abetting instruction in its closing instructions to the jury, during their deliberations, the jury asked for an explanation regarding how they were to understand the second element of the UDAA offense as expressed in M Crim JI 24.1, "that the defendant took possession of the vehicle and drove or took it away." The jury inquired whether they could understand the terms "drove or took away" as applying to "the driver or a passenger." The trial court responded by giving the jury two instructions concerning aiding and abetting, M Crim JI 8.1 and M Crim JI 8.5. Respecting M Crim JI 8.1, the trial court chose not to read subpart (1) regarding the charges against defendant because it considered that subpart inapplicable.

Analysis of the propriety of giving the jury the aiding and abetting instructions begins by examining MCL 767.39 which provides:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

In *People v Turner*, 213 Mich App 558, 568-569; 540 NW2d 728 (1995), disapproved in part on other grounds, *People v Mass*, 464 Mich 615, 627-628; 628 NW2d 540 (2001), this Court explained that, for conviction under an aiding and abetting theory of guilt:

Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime.

To sustain an aiding and abetting charge, the guilt of the principal must be shown. However, the principal need not be convicted. Rather, the prosecutor need only introduce sufficient evidence that the crime was committed and that the defendant committed it or aided and abetted it. [Citations omitted.]

-4-

In *People v Moore*, 470 Mich 56, 67-68; 697 NW2d 41 (2004) (quotation marks and citation omitted; alteration in original), our Supreme Court stated:

> The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that (1) the crime charged was committed by the defendant or some third person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.

In *People v Plunkett*, 485 Mich 50, 62; 780 NW2d 280 (2010), our Supreme Court explained that, to sustain an aiding and abetting theory, the evidence must support defendant's act of encouragement and assistance of the principal perpetrator of the crime, as well as, defendant's knowledge of the perpetrator's commission of the crime or the defendant's intent that the crime be committed. The evidence presented must establish all aiding and abetting elements. *Id.*

In this case, the record reflects that the defendant was charged with either willingly and without authority taking possession of and driving away or assisting another in taking, possession, driving or taking away of a motor vehicle. Review of the evidence presented at trial in a light most favorable to the prosecution establishes that a reasonable jury could conclude that defendant assisted in the taking and driving away of the stolen vehicle. Particularly, the record reflects that Apolzan identified defendant's roommate and close friend as having driven the stolen vehicle. Further, defendant's cell phone records placed defendant's cell phone at or near the situs of the home invasion and the initial driving away of the vehicle. The vehicle, when recovered by the police, contained defendant's fingerprints on numerous items within the vehicle. Evidence also established that defendant fled the scene of the accident involving the stolen vehicle. A trial witness testified that he saw defendant behind the wheel of the stolen vehicle trying to restart it after the crash. That witness testified that he confronted defendant at the scene of the crash and defendant fled the scene.

The direct and circumstantial evidence presented in this case established a factual basis to support the trial court's supplementation of its instructions because the jury could rationally conclude from the evidence that defendant committed the UDAA offense or assisted another person in the commission of it. Accordingly, the trial court did not err by issuing the supplemental instructions.

## B. SUFFICIENCY OF EVIDENCE

### 1. STANDARD OF REVIEW

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014) (citation omitted). "The credibility of witnesses and the weight accorded to evidence are questions for the

jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009) (citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *Id*. (citation omitted).

## 2. ANALYSIS

The elements of first-degree home invasion are:

(1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. [*People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016) (citations omitted).]

"The essential elements of UDAA are (1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission." *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993). Defendant argues that the evidence was insufficient to prove his identity as the person who committed the charged offenses. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The elements of a crime may be sufficiently proven by circumstantial evidence and reasonable inferences drawn from that evidence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

In this case, direct and circumstantial evidence established that defendant committed the charged offenses. To connect defendant to the home invasion and theft of the vehicle, the prosecution presented evidence that established defendant's movement to the vicinity of the complainant's home and the locations of the disposal of the contents of the stolen vehicle. The cell phone evidence established where defendant ventured during the early morning hours on the date of the commission of the crimes. The prosecution also presented evidence of defendant's fingerprints on numerous items found within the stolen vehicle after he crashed it and fled the scene of the accident. Further, defendant's statement during his police interview also indicated that he knew that the auto theft originated with a home invasion without being informed of that fact or any prompting by the investigating officers.

Defendant argues that his cell phone usage evidence did not establish his involvement in the crimes because the complainant's address and his two addresses were all within range of the same three cell phone towers and the prosecution failed to pinpoint his exact location to place him at the scene of the crimes. Evidence, however, established that a cell phone normally interacts with the nearest tower unless some other factor interferes with the interaction, such as a physical blockage. The record reflects that expert testimony clarified that the specific towers

that interacted with defendant's phone without interfering obstacles permitted the inference that defendant traveled along a pathway from the complainant's home to the locations where her stolen items were recovered. Although defendant presented expert testimony that advocated a different interpretation of the evidence, the jury could accord the weight to the evidence it deemed fitting in light of all of the evidence presented in the case. That the jury did not accord the weight he thinks it should have given his alternative explanation does not establish that the jury convicted him on insufficient evidence.

Moreover, review de novo of the evidence in a light most favorable to the prosecution establishes that the evidence presented at defendant's trial sufficed to support the jury's decision that defendant committed the home invasion and UDAA on June 24, 2015. Both direct and circumstantial evidence enabled the jury to draw inferences and conclude beyond a reasonable doubt that defendant committed the charged offenses.

In his Standard 4 brief, defendant also argues that the prosecution failed to present sufficient evidence for his convictions, and consequently, the trial court erred by denying his motion for a directed verdict. Defendant's argument lacks merit. For review of a trial court's decision "regarding a motion for directed verdict, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted). De novo review of the evidence viewed in a light most favorable to the prosecution establishes that the evidence supported the jury's convictions of defendant on the charged offenses and he lacked entitlement to a directed verdict.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. STANDARD OF REVIEW

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact, if any, for clear error, and review de novo its conclusions of law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. We also review de novo constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

### 2. ANALYSIS

On appeal, defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial could have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). Defendant must overcome a strong presumption that trial counsel provided effective assistance. *People v Seals*, 285 Mich

App 1, 17; 776 NW2d 314 (2009). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## a. SPEEDY TRIAL

Defendant argues that pretrial delays violated his right to a speedy trial and his trial counsel provided ineffective assistance by not effectively arguing the speedy trial issue before the trial court. Because these claims of error are linked, we address them together.

"Whether defendant was denied his right to a speedy trial is an issue of constitutional law," which we review de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Id.* at 261. "The Sixth Amendment's Speedy Trial Clause hones in on the . . . period[] from arrest or indictment through conviction." *Betterman v Montana*, ___ US ___; 136 S Ct 1609, 1613; 194 L Ed 2d 723 (2016) (citation omitted). The constitutional right to a speedy trial attaches when a defendant is arrested or formally accused. *Id.* Where the defendant has incurred a violation of his or her constitutional right to a speedy trial, the charges must be dismissed with prejudice. *People v Waclawski*, 286 Mich App 634, 664-665; 780 NW2d 321 (2009).

To determine whether a defendant has been denied the right to a speedy trial, four factors must be considered and balanced: "(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262 (citation omitted). "Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id.* at 262 (citation omitted). "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013) (citation omitted).

In this case, the police arrested defendant in September 2015 for receiving and concealing stolen property, a charge to which he pleaded guilty. Later, he was charged separately and arraigned for home invasion and UDAA on January 5, 2016. Accordingly, the relevant period for assessing defendant's speedy trial claim is from January 5, 2016 to the first date of trial, July 18, 2017. The period consisted of 560 days or approximately 19 months. "[I]f the delay not attributable to defendant exceeds eighteen months, prejudice is presumed." *People v Holtzer*, 255 Mich App 478, 492; 660 NW2d 405 (2003). The contrapositive of this principle, however, does not require us to presume prejudice if the delays were attributable to defendant.

"In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666.

"Unexplained delays are charged against the prosecution. Scheduling delays and docket congestion are also charged against the prosecution." *Id*. (quotation marks and citation omitted). "[D]elays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, [but] they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. (quotation marks and citation omitted).

The record in this case reveals that the most significant period of delay occurred during October 4, 2016, to April 11, 2017, 189 days. Analysis of the record reveals that the delay occurred because defendant moved to quash the bindover on the ground that the prosecution's cell phone evidence at the preliminary examination rested on hearsay testimony by a police officer who did not conduct the cell phone analysis. The trial court remanded for further development of the record rather than quashing the bindover. The remedy resulted in a delay based upon defendant's request. Defendant argues that the prosecution bore responsibility for this delay because it failed to present competent evidence at the first preliminary examination. However, the delay occurred because defendant requested the remand which ultimately did not improve his position. Therefore, the 189-day delay must be attributed to defendant, not the prosecution.

Many of the remaining periods of delay were caused by defendant's multiple pretrial motions and requests for adjournments. The record reflects that only 193 days of delay can be attributed to the prosecution and those delays cannot be assigned substantial weight. Analysis of the record in this case establishes that the length of the delays and the reasons for the delays do not weigh in defendant's favor. Further, although defendant asserted his right to a speedy trial, he did not do so until the month before trial and failed to offer a breakdown of the periods of delay. Accordingly, this factor also does not weigh in defendant's favor.

With regard to prejudice, defendant argues that the prosecution bears the burden of proving that defendant was not prejudiced because the delay was longer than 18 months. "[I]f the delay not attributable to defendant exceeds eighteen months, prejudice is presumed." *Holtzer*, 255 Mich App at 492. As stated earlier, the prosecution was responsible for 193 days of the pretrial delay with no delay attributable to the prosecution that can be deemed as having more than minimum weight. Because the prosecution caused roughly between only six to seven months of the delays in this case, and the bulk of the delays were caused by defendant, defendant bears the burden of proving prejudice.

Defendant argues that his defense was prejudiced because during the delays one of his purported alibi witnesses died. Close analysis of the record, however, does not support defendant's contention. Defendant's argument rests on his expectation that the decedent would have come forward with favorable evidence or admitted his guilt to exculpate defendant. That expectation lacks support. The record reflects that the witness died more than a year after defendant was charged and the witness never attempted to aid defendant's defense at any time before his death. Defendant also failed to produce other competent admissible evidence up to and during trial that the decedent committed the offenses. Moreover, supposing the decedent committed the offenses, he would have been entitled to assert his Fifth Amendment right against self-incrimination if called as a witness to protect himself from disclosing information that might lead to a later criminal proceeding. *People v Bassage*, 274 Mich App 321, 324-325; 733 NW2d

-9-

398 (2007). Absent any competent admissible evidence that the decedent committed the offenses, or any indication that he actually intended to testify on defendant's behalf and willingly admit his guilt of the charged offenses, we find no basis for inferring that defendant was prejudiced by the witness's death before defendant's trial. The delays attributable to the prosecution do not establish that the prosecution caused prejudice to defendant. Consequently, consideration and balancing of the factors weigh against finding violation of defendant's constitutional right to a speedy trial.

Defendant argues further that the prosecutor and his trial counsel may have been confused about the difference between a constitutional speedy trial claim and violation of the statutory 180-day rule set forth in MCL 780.131. However, defendant does not argue that he was entitled to relief under MCL 780.131, and de novo review of the record does not support his speedy trial claim. Accordingly, any comments by the parties suggesting that they conflated the statutory and constitutional claims do not affect our analysis.

Defendant argues further that his trial counsel provided ineffective assistance because he failed to present a breakdown of the various periods of pretrial delay attributable to each party in support of his speedy trial motion. When defense counsel argued the motion at a hearing on June 6, 2017, the trial court stated that it would consider the motion on the first day of trial and instructed counsel to calculate the number of days of delay for which each party had responsibility. Defense counsel did not present the requested calculation when he argued the motion at trial. Because the record would not have supported blaming the prosecution for the delays, defense counsel's decision not to present the requested calculation cannot be deemed ineffective assistance. Instead, it appears that he chose a different strategy in the face of the record that did not support defendant's claim that the prosecution violated his constitutional right to a speedy trial. Defense counsel's choice to engage a particular strategy does not constitute ineffective assistance of counsel simply because it did not work. *Matuszak*, 263 Mich App at 61. The record in this case does not support a conclusion that defense counsel's conduct fell below an objective standard of reasonableness in this regard.

Moreover, even if we were to find that the failure to present the requested calculation fell below an objective standard of reasonableness, defendant has not demonstrated that he was prejudiced by this deficiency because analysis of periods of delay and the causes for the delays did not favor defendant or establish any prejudice. Accordingly, counsel's failure to present a breakdown of the delays and to whom cause could be attributable cannot be held to have been outcome-determinative.

### b. FAILURE TO INTERVIEW AND CALL WITNESSES

Defendant also argues that his trial counsel provided ineffective assistance by failing to interview and call witnesses. He asserts that his counsel failed to preserve the testimony of defendant's roommate, Jeffrey Moore, who died before trial and he also argues that trial counsel provided ineffective assistance by failing to call witnesses Ivneet Singh, Andrea Howland, and Betty Danski, who he contends could have provided him an alibi. These issues were presented to the trial court during the evidentiary hearing held by the trial court in relation to defendant's motion for a new trial.

Decisions regarding "whether to call or question witnesses are presumed to be matters of trial strategy." *Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (quotation marks and citation omitted). The failure to call a supporting witness does not inherently amount to ineffective assistance of counsel, and there is no "unconditional obligation to call or interview every possible witness suggested by a defendant." *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). The failure to call an alibi witness does not constitute ineffective assistance of counsel if counsel believed that the purported alibi witness could not provide an effective alibi. *People v McMillan*, 213 Mich App 134, 141; 539 NW2d 553 (1995). "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id.* (quotation marks and citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990).

## 1. JEFFREY MOORE

The record lacks evidence that Moore would have provided favorable information or incriminated himself to support an alibi defense for defendant. Defense counsel testified at the evidentiary hearing that for several months defendant sought to defend on the ground that he had been asleep when the crimes were committed. Defense counsel testified that defendant did not inform him of Moore or his involvement in the crimes before Moore's death in 2017. No evidence establishes that defense counsel knew of Moore or had any reason to anticipate Moore's death to require him to secure his sworn testimony in advance of trial. Defense counsel testified that defendant did not share with him that he had alibi witnesses despite being asked during the several months before trial. Defendant first informed defense counsel about Moore shortly before trial. Defense counsel testified that had he known about Moore, he would have subpoenaed him and called him as a witness. Defense counsel's testimony established that defendant's representations in his affidavit regarding Moore lacked veracity because Moore died long before defendant informed defense counsel of Moore's purported commission of the crimes.

Nevertheless, after defendant told defense counsel of Moore, defense counsel developed the defense theory of Moore as the perpetrator of the crimes. Defense counsel elicited testimony from Apolzan that she saw Moore drive the stolen vehicle. Her testimony did not establish that she observed Moore on the night that the crimes were committed. Defense counsel intended to elicit further testimony that implicated Moore but her testimony consisted of inadmissible hearsay to which the prosecution objected and the trial court sustained the objection which precluded the introduction of further testimony in that regard.

Based on the record in this case, we cannot reasonably conclude that defense counsel's conduct fell below an objective standard of reasonableness. Further, the record reflects that the trial court properly considered and weighed all of the evidence presented by the parties for its determination of defendant's motion for a new trial and claims that defense counsel provided ineffective assistance. The trial court's factual findings were supported by record evidence and we find no legal error that undermines its decision. The trial court, therefore, did not err by ruling that defense counsel did not provide ineffective assistance regarding Moore as a witness.

## 2. IVNEET SINGH

Respecting Ivneet Singh, defense counsel attempted to endorse Singh as an alibi witness shortly before trial, but the trial court denied the request as untimely. Singh testified at the evidentiary hearing that she talked with defendant by Snapchat after 1:45 a.m. on June 24, 2015 and her conversation lasted about 20-30 minutes. She recalled the time of the conversation because she customarily called defendant after leaving her workplace at 1:30 a.m. She admitted, however, that she did not know what defendant was doing at 3:00 a.m., the time that the data downloaded from defendant's cell phone indicated his use that placed him within the vicinity of the complainant's home and the disposal of the complainant's knives and papers. At trial, the prosecution relied on the cell phone data to establish the timeline of defendant's movements on the morning of the commission of the home invasion and car theft. Because Singh's communication with defendant occurred more than an hour before the commission of the charged offenses and defendant's cell phone data established his movements within the vicinity of the complainant's home and the disposal of the complainant's knives and papers, Singh's testimony would not have provided defendant an alibi defense. Accordingly, defendant cannot establish that defense counsel's conduct fell below an objective standard of reasonableness. Further, he was not deprived of a defense by counsel's failure to timely endorse and call Singh as a witness at trial.

The record reflects that the trial court properly considered and weighed all of the evidence presented by the parties for its determination of defendant's motion for a new trial and claims that defense counsel provided ineffective assistance. The trial court's factual findings were supported by record evidence and we find no legal error that undermines its decision. The trial court, therefore, did not err by ruling that defense counsel did not provide ineffective assistance regarding Singh as a witness.

## 3. MICHELLE APOLZAN AND BETTY DANSKI

Neither Michelle Apolzan nor Betty Danski testified at the evidentiary hearing. They were not alibi witnesses and there is no record evidence supporting defendant's allegation that they would have given favorable testimony. Michelle's statement that she saw Moore with the stolen vehicle on the afternoon of June 24, 2015, did not establish a defense for defendant and did not undermine the cell phone evidence that placed defendant within the vicinity of the complainant's home during the commission of the crimes and the disposal of the complainant's knives and papers.

Danski, defendant's grandmother, submitted an affidavit stating that Jenah Apolzan brought bags of defendant's clothing to her home. Defendant argued to the trial court that her testimony in this regard would have contextualized the prosecution's evidence of a recorded telephone call between defendant and Apolzan in which defendant instructed her to "get rid of the clothes." Defendant asserted that Danski's testimony could negate any inculpatory inference that the jury may have drawn from his statement. The record reflects that, at trial, the prosecution presented the recorded telephone conversation as one of many pieces of circumstantial evidence that connected defendant to the crimes. On cross-examination, the prosecution attempted to elicit testimony from Apolzan regarding the recording to implicate defendant in the crimes. The record reflects that the cross-examination did not establish that the

conversation directly implicated defendant in the commission of the crimes. Considering the vague nature of defendant's remark and that it related only to a minor circumstantial aspect of the prosecution's case against defendant, we are not persuaded that defense counsel's failure to call Danski constituted conduct that fell below an objective standard of reasonableness. The record establishes that defense counsel's decision was a matter of trial strategy and we decline to second-guess his decision. Moreover, even if the failure to call Danski as a witness fell below an objective standard of reasonableness, the record does not establish that the absence of her testimony prejudiced defendant.

The record reflects that the trial court properly considered and weighed all of the evidence presented by the parties for its determination of defendant's motion for a new trial, and its decision that defense counsel did not provide ineffective assistance was supported by record evidence and we find no legal error that undermines its decision. The trial court, therefore, did not err by ruling that defense counsel did not provide ineffective assistance by not calling these witnesses.

## 4. ANDREA HOWLAND

Defendant submitted an affidavit of Howland with his motion for a new trial. In her affidavit, Howland stated that, on June 24, 2015, she and defendant were in the basement of the home where defendant and Moore lived watching a movie when Moore arrived around 2:00 a.m., showed defendant a small white car in the driveway, and asked defendant for help to get rid of the car. She stated in her affidavit that defendant and Moore left the house for approximately 30 minutes. At the evidentiary hearing held by the trial court on defendant's motion for a new trial, on direct examination Howland testified to the same facts as stated in her affidavit. On cross-examination, she testified that she had a romantic relationship with defendant on June 24, 2015. She testified that defendant had his cell phone in his possession during June 24, 2015.

She testified that she felt that defendant had been wrongfully convicted and that she was his alibi. She affirmed that she knew of his arrest on the charges and communicated with him before his trial while he remained in jail. She knew that he pleaded guilty during 2016 to the charge of receiving and concealing stolen property and affirmed that later defendant told her that he faced charges for home invasion. Howland testified that she placed two calls to defense counsel and stated that she felt she had relevant information about defendant's case. She stated that she also wrote a letter to defense counsel that stated that she was present with defendant and could provide information about his whereabouts. She testified that defense counsel never responded. Although she felt she was defendant's alibi, she admitted that she did not attend defendant's trial.

Defense counsel testified that he had no recollection of any communication from Howland. His testimony indicates that he did not know who she was. Defense counsel testified that he met with defendant to establish a defense theory and in that regard defendant maintained for months that he was innocent because he slept during the time the crimes were committed. Defendant did not disclose any details that varied from his sleep-based defense until his trial was imminent. Defense counsel also testified that he routinely investigated potential witnesses if a client informed him of the names of potential witness. He declared that he followed up on all information given to him.

When reviewing a trial court's factual determinations made following an evidentiary hearing, if resolution of a factual issue depends on the credibility of witnesses or the weight of evidence, we must defer to the trial court's superior opportunity to evaluate these matters. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). The trial court in this case concluded that Howland's potential trial testimony would not have provided defendant a complete alibi. The record supports the trial court's finding because she could not establish defendant's whereabouts for the entire time from 12:00 a.m. to 8:00 a.m. on the morning of the crimes. Although the trial court did not articulate a specific finding that Howland lacked credibility, the record reflects that the trial court weighed her testimony and defense counsel's testimony and decided that defense counsel's testimony was more credible. Giving the trial court the deference we must in this case, we cannot say that the trial court's factual findings constituted clear error. Nor do we conclude that the trial court erred by ruling that defense counsel's conduct did not fall below an objective standard of reasonableness. The record establishes that defense counsel properly exercised his discretion in matters of trial strategy. We cannot substitute our judgment for that of defense counsel regarding matters of trial strategy, or assess his competence with the benefit of hindsight. *Matuszak*, 263 Mich App at 58.

Moreover, even if defense counsel's conduct fell below an objective standard of reasonableness because he did not call Howland as a trial witness, defendant has not established that, but for his counsel's error, there is a reasonable probability that the outcome of his trial would have been different. As explained above, the prosecution presented the jury substantial direct and circumstantial evidence from which they could find defendant guilty of the charged offenses. Although Howland could have provided testimony regarding defendant's whereabouts, her testimony did not negate or even undermine the evidence of defendant's cell phone use that place him within the vicinity of the complainant's home and the disposal of the complainant's knives and papers during the morning of the commission of the crimes. The trial court ruled that defendant could not establish that the outcome of his case would have changed with the testimony of the witnesses defense counsel did not call at trial. The record supports the trial court's decision. Accordingly, we find no merit to defendant's claim of error.

## D. LATE ENDORSEMENT OF WITNESS

Defendant argues that the trial court abused its discretion by denying his request for the late endorsement of Singh as an alibi witness. We review a trial court's decision regarding the late endorsement of a witness for an abuse of discretion. *People v Gadomski*, 232 Mich App 24, 32-33; 592 NW2d 75 (1998). An abuse of discretion exists when "the trial court's decision falls outside the range of principled outcomes." *People v Gipson*, 287 Mich App 261, 262; 787 NW2d 126 (2010).

If a defendant intends to present an alibi defense at trial, he must notify the prosecution of his intent within 15 days after his arraignment, "but not less than 10 days before the trial of the case, or at such other time as the court directs." MCL 768.20(1). The notice must contain "the names of witnesses to be called in behalf of the defendant to establish that defense" and "specific information as to the place at which the accused claims to have been at the time of the alleged offense." MCL 768.20(1). "If the defendant fails to file and serve the written notice prescribed in section 20 . . . the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi . . . ." MCL 768.21(1). Notwithstanding the statutory language providing

-14-

that the court shall exclude alibi testimony when notice was not given, our Supreme Court held in *People v Travis*, 443 Mich 668, 679; 505 NW2d 563 (1993), that "the language [in MCL 768.20(1) stating] 'or at such other time as the court may direct' preserves the trial court's discretion to fix the timeliness of notice in view of the circumstances." Accordingly, the trial court "may exclude alibi evidence if the statutory notice is not given." *People v McMillan,* 213 Mich App 134, 140; 539 NW2d 553 (1995).

When a party seeks the late endorsement of a witness, the trial court should consider:

"(1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case." [*Travis,* 443 Mich at 682, quoting *United States v Myers,* 550 F2d 1036, 1043 (CA 5, 1977).]

In this case, even if the trial court erred by denying defendant's untimely request to endorse Singh as a witness, the error was harmless. For a substantial amount of the time while defendant's case pended before trial, defendant based his defense on his claim that he slept through the night. Only shortly before his trial did he decide to present an alternative alibi defense based on Singh's testimony. As indicated earlier, Singh's proposed testimony would not have supported an alibi defense because her communication with defendant occurred more than an hour before the time the prosecution's evidence placed defendant within the vicinity of the complainant's home and the disposal of the complainant's knives and papers. Defendant cannot claim prejudice from the trial court's denial of defendant's untimely request because Singh's testimony could not establish defendant's alibi. Moreover, the evidence admitted at trial weighed heavily in favor of defendant's convictions of the charged offenses. Accordingly, defendant has not established that the trial court abused its discretion in this regard.

## E.  EXCLUSION OF HEARSAY TESTIMONY

Defendant also challenges the trial court's decision to exclude hearsay testimony that defense counsel sought to elicit from Apolzan regarding statements made to her by Moore. We review for an abuse of discretion a circuit court's decisions regarding the admission or exclusion of evidence. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). "An abuse of discretion occurs when a trial court selects an outcome that falls outside the range of principled outcomes." *Id*. (citation omitted). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

Defendant does not dispute that the testimony defense counsel sought to elicit constituted hearsay. Instead, he argues that the testimony was admissible under MRE 804(b)(3), which provides an exception to the general prohibition of hearsay testimony for a statement made by an unavailable declarant where the statement

was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal

liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Although a statement by Moore confessing to the home invasion and UDAA would have subjected him to criminal liability, because the statement was being offered to exculpate defendant, the accused, it lacked admissibility unless corroborating circumstances clearly indicated the trustworthiness of the statement. Defendant failed and could not satisfy this aspect of the rule. Absent a showing that corroborating circumstances clearly indicated the trustworthiness of Moore's statement, the trial court did not abuse its discretion by excluding it.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford